Pedro **VILLARRIEL**, alias Peter Villarriel, alias Pete Villareal, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 28346.

Court of Criminal Appeals of Texas.

June 20, 1956.

On Rehearing Oct. 10, 1956.

Ronald Smallwood, San Antonio, for appellant.

Wallace T. Barber, Dist. Atty., San Marcos, Leon B. Douglas, State's Atty., Austin, for the State.

DAVIDSON, Judge.

Burglary is the offense; the punishment, two years' confinement in the penitentiary.

The front plate glass window of a hardware store in the city of San Marcos was smashed and some knives were taken from the display therein.

By his written confession, appellant admitted committing the crime.

Appellant, twenty years of age at the time, did not testify.

He filed an application for a suspended sentence and supported it by the testimony of his sister that he had never before been convicted of a felony in this or any other state.

The sister also attested appellant's good reputation for being a peaceable and law-abiding citizen.

Upon cross-examination of the sister, the state inquired of her if she had ever heard that appellant had stolen four hub caps from a Cadillac and sold them for three dollars each. The reply was in the negative. The state then asked the witness: "Have you heard that he was filed against by the City of San Marcos for beating up a crippled person * * * and was fined, and the court costs, of $30.00 * * *?" The witness replied to those questions also in the negative. The witness was then asked: "Have you heard that he is either a member of or running around with this gang of hoodlums known as Pachucos?" No reply appears to have been given to that question. The witness was then asked: "Have you heard that either the night before or within two or three nights before he was arrested on February 2, 1956, that he took a fourteen-year-old white girl out in the country and kept her out in the country all night in his car?" To that question the witness replied: "No, sir."

Appellant objected to each and all of the above questions as being hearsay and prejudicial and as inquiring of matters wholly extraneous to the offense charged.

The trial court expressly limited the testimony to the jury's consideration as bearing upon appellant's sister's credibility and knowledge upon which she based her testimony attesting appellant's good reputation, and so advised the jury when the questions were propounded.

■ There is no question but that, upon cross-examination, the state may inquire of a character witness who has testified to the good reputation of the accused as being a peaceable and law-abiding citizen as to whether he (the witness) had heard of specific acts of misconduct by the accused. 39 Tex.Digest, Witnesses, ■ Adams v. State, 158 Tex.Cr.R. 306, 255 S.W. 2d 513.

Here, the questions propounded by state's counsel complied with the rule in so far as the inquiry was limited to whether the witness had heard of the alleged acts of misconduct.

The rule stated, however, is subject to certain limitations, among which is that the acts inquired about must be inconsistent with the trait of character to which the witness has attested. Kennedy v. State, 150 Tex.Cr.R. 215, 200 S.W.2d 400, 403.

In the Kennedy case we held that it was error for state's counsel to propound to a character witness who had attested the good reputation of the accused for being a peaceable and law-abiding citizen the question as to whether he had heard that the accused

had been " 'having illicit relations with a woman in that neighborhood' ". The witness replied that he had not so heard. In holding that the asking of the question was error, we did so because the act inquired about was not unlawful and could not thereby be utilized as a medium to defeat the good reputation of a citizen for being law-abiding.

At least two of the questions propounded to the witness fall within the rule stated.

Webster defines the word "hoodlum" as "a young rowdy." We know of no statute that makes it unlawful for one to be a member of a gang of hoodlums or young rowdies.

What is meant by the word "Pachucos," we are not advised. We are aware of no statute of this state which makes it unlawful to be a "Pachuco" or to run around with a gang known as "Pachucos."

Whether or not it is unlawful to take a fourteen-year-old white girl out in the country and keep her all night need not be determined, for the fact remains that the vice accentuated in the question was that the girl was a white girl and the appellant was a Latin-American. The law recognizes no distinction between the races.

It is apparent that under the rule announced in the Kennedy case the asking of the two questions mentioned was error.

It is a cardinal rule under our jurisprudence that an accused is entitled to be tried solely for the offense charged against him and not for being a bad man, generally, or a chronic violator of the law.

Proof of extraneous offenses or acts evidencing bad conduct is admissible only when such offenses or acts come under some exception to the rule just stated.

Other matters presented in the record are overruled without discussion.

For the error pointed out, the judgment is reversed and the cause is remanded.

On State's Motion for Rehearing

MORRISON, Presiding Judge.

■ The State, through her district attorney, urges that we reconsider our holding that the asking of the two questions set forth originally constituted reversible error. As we see it, questions asked a reputation witness may constitute reversible error if they:

1. Are asked in bad faith,

2. Constitute a direct charge that the incident mentioned in the question has occurred,

3. Inquire about an act which is prejudicial but is not inconsistent with the good reputation about which the witness has testified.

■ In the case at bar, numbers one and two above are not shown to have been violated. Now, as to three: While we do not feel that the term "Pachuco" has become so widely known that we might take judicial knowledge thereof, we have concluded that modern usage has so changed the meaning of the words "gang" and "hoodlums" as to require that we give full recognition of their current meaning.

Webster's New International Dictionary (Second Edition) defines "gang" as follows: "A company of persons acting together for some purpose, usually criminal, or at least not good or respectable."

The Supreme Court of Nevada in State v. Teeter, 65 Nev. 587, 200 P.2d 657, 686, said, " 'Hoodlum' is an opprobrious term, defined in Webster's New International Dictionary, 2nd Edition, as 'a young rowdy'. In the public mind, the term 'hoodlum' is associated with 'gangster' * * *."

■ We have concluded that the asking of this question did not constitute reversible error because it inquired about a trait of character that was inconsistent with the reputation about which the witness had testified.

We now move on to the question about keeping the 14 year old girl out all night. On original submission, we discussed only the fact that the appellant was a Latin-American and that the question described the girl as "white". Latin-Americans are members of the white race. Sanchez v. State, 156 Tex.Cr.R. 468, 243 S.W.2d 700, 701.

■ Article 534, Vernon's Ann.P.C., denounces the offense of contributing to the delinquency of a minor. After more mature deliberation, we have concluded that the act of a 20 year old man in taking a 14 year old girl out in the country and keeping her all night in his automobile would constitute such an act as would debase or injure the morals of such girl and would be inconsistent with the man's reputation as being a peaceable and law-abiding citizen.

The State's motion for rehearing is granted, the judgment of reversal is set aside, and the judgment of the trial court is now affirmed

DAVIDSON, Judge (dissenting).

I remain convinced of the correctness of the conclusion expressed in the original opinion.

Defendants ought to be tried solely for the offense charged against them in the state's pleading; they ought not to be called upon to defend against rumors, whisperings, and insinuations which are obviously hurtful and inflammatory.

This appellant had to defend not only against the accusations against him but also against the insinuations of guilt cast upon him by the questions of the district attorney.

Under the holding of my brethren, an accused cannot restrict the prosecution to the offense charged in the indictment, for the bridle has now been taken off and unlimited freedom now conferred upon the state to prosecute for rumors, insinuations, and whisperings not shown or contended to be true, in fact.

To the granting of the motion for rehearing and the affirmance of this case, I respectfully dissent.