## LARRIE FOGLE V. STATE

No. 31,944. June 15, 1960

Motion for Rehearing Overruled November 2, 1960

*Wendell S. Loomis*, Houston 2, for appellant.

*Dan Walton*, District Attorney, *Samuel H. Robertson, Jr., Lee P. Ward, Jr.*, Assistants District Attorney, Houston, and *Leon Douglas*, State's Attorney, Austin, for the state.

WOODLEY, Judge.

The offense is rape; the punishment, 50 years.

The evidence from the standpoint of the state was to the effect that the 12-year-old prosecutrix was taken to a municipal swimming pool in Houston about 7 P.M. by her older sister, who returned about 8:35 P.M. and found the prosecutrix standing in the pump room with appellant.

The prosecutrix testified that while she was at the swimming pool appellant called her to him, saying he wanted to talk to her, and as she entered the pump room he closed and locked the door, turned out the light, removed his clothes and her bathing suit and despite her resistance he succeeded in having an act of intercourse with her.

The prosecutrix reported to her sister, mother and father what appellant had done, upon reaching home.

The doctor who examined the girl at about 10:40 P.M. found a blood clot and bruise on the back half of her vaginal outlet, and a lacerated hymen, and found dead male sperm in smears from her vagina. The chemist who examined the girl's bathing suit, *panties and shorts* found blood stains *on the bathing suit* and seminal stains in the crotch *area of the panties and shorts*.

Appellant did not testify, but filed application for suspension of sentence and called a number of witnesses who testified that they were acquainted with his general reputation as a peaceful and law abiding citizen, and it was good.

Steve Smith, an employee at the swimming pool, testified that he saw appellant go into the men's dressing room after talking to the sister of the prosecutrix. On cross-examination counsel for the state asked: "You don't know whether he went into the dressing room there to wash the blood off of him or not do you?" The witness answered "No Sir."

Appellant then objected upon the ground of prejudice and the court reminded counsel that the question had already been answered, but sustained the objection and, in compliance with appellant's request, instructed the jury: "The jury will not consider it for any purpose whatever."

We overrule appellant's contention, which is his first ground for reversal, that the reference to blood was so prejudicial that a mistrial should have been ordered. We do not agree that the question implied a quantity of blood other than shown by the examination of the prosecutrix and her bathing suit.

The remaining ground for reversal relates to questions propounded to the character witnesses on cross-examination.

Appellant came to Houston in the spring and the offense was committed on August 19, 1959. Except for the mother of appellant, the character witnesses attested his reputation in the community where he had lived since his arrival in Houston.

Appellant's mother testified on direct examination that he was committed to the Illinois Youth Commission but had never been convicted of a felony or of anything other than as a juvenile; that appellant was a resident of her home in Lansing, Illinois from his birth "up until last spring"; that she was acquainted with his general reputation in the community in which

he lived for being a peaceful and law abiding citizen and it was good.

On cross-examination she testified, without objection, that appellant was committed and placed in an institution as an incorrigible juvenile, and in September 1958 when he was no longer a juvenile, he was convicted for misdemeanor larceny and placed on probation in Hammond, Indiana, and was living with her at the time, and answered "I guess so" when asked "was he living with you when he was convicted in January 1959 for disorderly conduct?"

Questions similar to those propounded to appellant's mother without objection was propounded to other character witnesses and most were asked concerning whether they had heard that in Lansing, Illinois, on January 27, 1959, appellant was convicted for disorderly conduct; and whether they had heard that warrants of arrest from Hammond, Indiana, for assault and battery, and from Lansing, Illinois, six warrants were out for appellant's arrest for burglary.

Similar questions propounded on cross-examination of witnesses who had testified that they were acquainted with the defendant's general reputation as peaceful and law abiding were held permissible in Torbert v. State, 166 Tex. Cr. Rep. 311, 313 S.W. 2d 303; Villarriel v. State, 163 Tex. Cr. R. 654, 295 S.W. 2d 222; Uresti v. State, 167 Tex. Cr. Rep. 189, 319 S.W. 2d 340; and Adams v. State, 158 Tex. Cr. R. 306, 255 S.W. 2d 513.

The record affirmatively reflects that the questions were not asked in bad faith, the prosecuting attorney having information before him of the existence of the warrants.

The evidence is sufficient to sustain the jury's verdict and no reversible error appears.

The judgment is affirmed.