Francis ODUM, aka Frankie
Odum, Appellant,

v.

The STATE of Texas, Appellee.

No. 50888.

Court of Criminal Appeals of Texas.

Dec. 17, 1975.

On Rehearing Feb. 25, 1976.

John Charles Hardin, Dallas, for appellant.

Thomas A. Curtis, Dist. Atty., and Bruce P. Sadler, Asst. Dist. Atty., Amarillo, Jim D. Vollers, State's Atty., Davis S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

GREEN, Commissioner.

In a trial before a jury, appellant was convicted of murder with malice. Punishment was assessed at 99 years.

Viewing the evidence in the light most favorable to the judgment, the record reflects that in the evening of November 15, 1973, appellant and Frank Fales, uncle of appellant, acting together, assaulted Clem Pope, robbed him and killed him by stabbing him with a knife.

Appellant complains of the admission, over objection, of evidence of extraneous offenses in the cross-examination of his wife. This contention is being considered in the interest of justice. Art. 40.09, Sec. 13, V.A.C.C.P.

The record reflects that after the commission of the offense appellant went to his residence. About 10:00 o'clock p. m., he and his wife, Helen Odum,[1] went to a lounge, where they sat at a table with Frank Fales and his girl friend, Mary Marshall.

During the direct examination of Helen Odum, a defense witness, she testified as follows at the guilt stage:

"Q All right. When you got out to the Outsider Lounge, did you notice anything that was unusual in the attitude of your husband?

"A He acted scared.

"Q Well, could you describe that to the jury, please?

"A Well, just real white all over and kind of scared to open his mouth.

"Q How does he act around his uncle and around other people?

"A Definitely not that way.

"MR. CURTIS [State]: I'm sorry, I didn't hear?

"MR. KOLIUS [Defense]: You are going to have to speak louder.

"A Definitely not that way.

"Q (By Mr. Kolius): How does he act?

"A Just normal.

"Q Could you tell the jury what normal is, perhaps?

"A He would kid around and pretty good natured, and he wouldn't let anyone say anything he thought was wrong in front of me.

"Q All right, and was his conduct then, that afternoon, unusual?

"A Very unusual."

Thereafter, on cross-examination the record reflects the following questions asked, answers given, objections of the appellant, and rulings of the court:

"Q Now, in your testimony to Mr. Kolius, if I understand it correctly, he asked you how Frankie acted around you and others, whether he was good-natured, cranky or what, and you answered to him he was a good-natured sort of a fellow that always tried to get along with others and good-natured around other people; isn't that what you said on direct?

"A Yes.

"Q Are you telling us, that jury, that that is true?

"A Yes.

"Q Isn't it true that you were with your husband back on December the 1st, 1972, out here at McDonald's at Fillmore and Northeast Eighth when he tried to cut a kid's throat?

"A Yes sir.

"MR. KOLIUS: May it please the Court, the District Attorney has attempted to, and has, in fact, introduced before the jury an extraneous evidence without the proper predicate, therefore, being laid and not only, Your Honor, has he attempted to do so, but, he has asked the question in such a manner that the mere asking of the question has met with a direct assertion on his part that the matters inquired about it, in fact, true. And for that reason, Your Honor, we ask at this time that the Court grant a mistrial for the sim-

---

1. There is no evidence in the record connecting Helen Odum with the commission of the offense.

ple reason that any instructions that the Court might give this jury would be completely useless and could not remove from the jury's mind the impact of such evidence.

"THE COURT: Overruled.

"MR. KOLIUS: Note our exception.

"Q (By Mr. Curtis): You were there, weren't you?

"A Yes sir.

"Q Now have you heard that up in Minot, South—North Dakota, early in 1972 when you were not around there he cut another kid's throat?

"MR. KOLIUS: Same objection, Your Honor.

"THE COURT: Overruled.

"A I hadn't heard it.

"Q (By Mr. Curtis): You had not heard anything about that?

"A No sir.

"Q Had you heard that there was a warrant issued for his arrest for assault with a knife from Minot, South Dakota from early in 1972?

"A No sir.

"Q You know he was up there in Minot, South Dakota along about April, 1972, don't you?

"A I don't know where he was.

  *  *  *  *  *  *

"Q Do you want to tell this jury again that he was always good-natured and even tempered around others?

"A To me.

"Q How about around others?

"A Around others he was.

"Q He was. You are going to stand by that statement?

"A Yes sir.

"Q Even though you were out there at McDonald's when he cut that kid's throat?

"A I didn't see it.

"Q It wasn't just one kid that got cut, according to what you heard out there, either, was it?

"A I don't know what happened out there, I was there, but I didn't see it."

Appellant contends that this cross-examination of his wife constituted reversible error, arguing (1) that Helen Odum was not a character witness, and his reputation had not been placed in issue; (2) if Helen Odum had testified as a character witness on direct examination, the questions of the State inquired of the witness' knowledge of an extraneous offense, and did not inquire as to what she had heard; and (3) that the evidence concerning the extraneous offenses was inadmissible and prejudicial, since it did not tend to prove a material fact issue.

In 23 Tex.Jur.2d, Evidence, Section 194, page 294, it is stated:

"As a general rule, in criminal cases the accused can be convicted, if at all, only by evidence that shows he is guilty of the offense charged. Consequently, evidence that he has committed other crimes that are remote and wholly disconnected from the offense with which he is charged is ordinarily inadmissible." See *Wilbourn v. State,* Tex.Cr.App., 524 S.W.2d 306; *Powers v. State,* Tex.Cr.App., 508 S.W.2d 377; *Hafti v. State,* Tex.Cr.App., 416 S.W.2d 824.

There are, of course, exceptions to the general rule. In *Albrecht v. State,* 486 S.W.2d 97, at p. 100, this Court wrote:

"Evidence of extraneous offenses committed by the accused has been held admissible: (1) To show the context in which the criminal act occurred—what has been termed the 'res gestae'—under the reasoning that events do not occur in a vacuum and that the jury has a right to hear what occurred immediately prior to and subsequent to the commission of that act so that they may realistically evaluate the evidence. (2) To circumstantially prove identity where the state lacks direct evidence on this issue. (3) To prove

scienter, where intent or guilty knowledge is an essential element of the state's case and cannot be inferred from the act itself. (4) To prove malice or state of mind, when malice is an essential element of the state's case and cannot be inferred from the criminal act. (5) To show the accused's motive, particularly where the commission of the offense at bar is either conditioned upon the commission of the extraneous offense or is a part of a continuing plan or scheme of which the crime on trial is also a part. (6) To refute a defensive theory raised by the accused.

"These exceptions to the general rule excluding evidence of the accused's prior criminal conduct are not mutually exclusive. . . ."

In the instant case, appellant did not testify, and offered no evidence tending to prove an alibi or mistaken identity. His defense appears to be that although present when the offense was committed by Fales he took no part in the assault upon deceased or in the killing and robbery. We find no exception to the general rule stated above to be present in the instant case. The State should not have been permitted to cross-examine appellant's wife concerning the "cutting of a kid's throat" at McDonald's or at Minot, North Dakota.

■ Appellant correctly contends that the testimony of Helen Odum on direct examination did not constitute her a character witness so as to permit her to be cross-examined with "have you heard" questions. Her testimony was not geared toward a showing of good, lawful character or reputation, but was directed at proof of appellant's conduct and appearance at a particular time. See *Els v. State,* Tex.Cr.App., 525 S.W.2d 11, and authorities there cited. *Cf. Childs v. State,* Tex.Cr.App., 491 S.W.2d 907; *Mitchell v. State,* Tex.Cr.App., 517 S.W.2d 282; *Hurd v. State,* Tex.Cr.App., 513 S.W.2d 936, 945; *Aldreghetti v. State,* Tex.Cr.App., 507 S.W.2d 770; *Salazar v. State,* Tex.Cr.App., 494 S.W.2d 548.

■■ However, even if her testimony on direct examination be construed as making her a character witness for appellant, the State may not ask whether the witness has personal knowledge of the act, nor may its questions be so framed as to imply that the act has actually been committed. *Brown v. State,* Tex.Cr.App., 477 S.W.2d 617; *Webber v. State,* Tex.Cr.App., 472 S.W.2d 136. Objection was overruled to the inquiry: "Isn't it true that you were with your husband on December the 1st, 1972, out here at McDonald's at Fillmore and Northeast Eighth when he tried to cut a kid's throat" which question was answered as shown in the quote, *supra.* Thereafter, the State proceeded further to imply that "It wasn't just one kid that got cut, according to what you heard out there, was it?"

We conclude that prejudicial reversible error was committed during the cross-examination of Helen Odum.

The judgment is reversed and the cause is remanded.

Opinion approved by the Court.

## OPINION ON STATE'S MOTION FOR REHEARING

DOUGLAS, Judge (dissenting).

In the opinion on the original submission, this Court reversed the conviction on the ground that the prosecutor asked an improper question of the appellant's wife.

The State contends that the appellant failed to preserve error in that (1) he did not ask the court to instruct the jury not to consider the answer; (2) that the same testimony got before the jury without objection; and (3) that the question was proper in view of the prior examination of the witness.

The sufficiency of the evidence is not challenged. The record reflects that the body of the deceased was found in a ditch. He died as a result of a stab wound. The deceased, appellant and Frank Fales had been drinking beer and visiting pool halls. The deceased had some large bills on his

person. A short time after the homicide, appellant's wife saw him at a lounge. While Helen Odum, appellant's wife, was testifying at the guilt stage of the trial, she testified on direct examination as follows:

"Q. (Mr. Kolius, Defense Counsel): All right. When you got out to the Outsider Lounge, did you notice anything that was unusual in the attitude of your husband?

"A. He acted scared.

"Q. Well, could you describe that to the jury, please?

"A. Well, just real white all over and kind of scared to open his mouth.

"Q. How does he act around his uncle and around other people?

"A. Definitely not that way.

" * * *

"Q. How does he act?

"A. Just normal.

"Q. Could you tell the jury what normal is, please?

"A. He would kid around and pretty good natured, and he wouldn't let anyone say anything he thought was wrong in front of me.

"Q. Alright, and was his conduct then, that afternoon, unusual?

"A. Very unusual."

On cross-examination she was asked the following:

"Q. (Mr. Curtis, District Attorney): Now, in your testimony to Mr. Kolius, if I understand it correctly, he asked you how Frankie acted around you and others, whether he was good-natured, cranky or what, and you answered to him he was a good-natured sort of fellow that always tried to get along with others and good-natured around other people; isn't that what you said on direct?"

She answered twice that the matter stated in the question was true. When the question was asked if she was present when the appellant cut the boy, appellant's counsel objected that it was evidence being introduced on an extraneous offense without a proper predicate; that the asking of the question was a direct assertion on the part of the prosecutor. He then asked for a mistrial and stated that the instruction to the jury would be useless.

Ordinarily a reversal is not required when the error could have been cured by an instruction to the jury and the record reflects no request for such an instruction. See *Daley v. State,* 491 S.W.2d 932 (Tex.Cr.App. 1973); *Dorsey v. State,* 450 S.W.2d 332 (Tex.Cr.App.1969), and *Blassingame v. State,* 477 S.W.2d 600 (Tex.Cr.App.1972).

It has also been held that such an instruction cures any error when other testimony of similar import is admitted without objection as was done in this case. See *Buckelew v. State,* 431 S.W.2d 13 (Tex.Cr.App. 1968).

Assuming that it was improper to ask the question of Helen Odum concerning appellant's cutting other people, there was other testimony of substantially the same facts admitted without objection. Frank Fales, an uncle of appellant, testified on cross-examination without objection and the State read before the jury a statement given by him. A pertinent part of the statement is as follows:

"When this guy and Frankie were fighting in the ditch, I did not see Frankie with a knife, but I do know for a known fact that Frankie uses a knife when he gets into a fight and has cut people before. At the police station I was shown some pictures of that man and was told that the pictures they showed me was the pictures of the same man that Frankie Odum fought with and probably killed, if he was stabbed, and Frankie has cut people without killing them."

This shows that appellant used knives in fights and had cut people before and had cut people without killing them.

Since substantially the same facts were read before the jury without objection, any improper admission of the evidence by Helen Odum concerning appellant's having cut people was rendered harmless. *Nicholas v. State*, 502 S.W.2d 169 (Tex.Cr.App.1973).

From the testimony, not only was Helen Odum testifying to appellant's conduct on a particular time but was comparing it with the way she contended appellant normally acted at other times. The question, "How does he (appellant) act around his uncle and other people?", was not limited to a particular time but covered his actions generally and was not limited to any particular time. She answered that he acted just normal. She had just testified that he had "acted scared" at the Outsider Lounge. Counsel for appellant was asking the questions to elicit from Helen Odum that appellant's conduct on a specific afternoon was unusual from his general conduct. The logical import from the testimony obtained on direct examination was that on a particular time the appellant's conduct was not normal and was very unusual and the reason that he was not normal was that he was the type of person who was normally and usually a person who would kid around with other people and was good-natured toward other people. She was then asked if appellant had "cut a kid's throat at McDonald's". She admitted that she was present at the McDonald's incident and this contradicted her testimony that he was good-natured.

Her testimony was also geared toward persuading the jury to find appellant not guilty because he had good character and law-abiding habits. This Court in *Childs v. State*, 491 S.W.2d 907 (Tex.Cr.App.1973), wrote:

> "Appellant may not have a witness testify about his good character traits but avoid 'placing his reputation in evidence' simply by not specifically asking whether appellant enjoyed a good reputation in the community."

For each of the three contentions the motion for rehearing should be granted and the judgment should be affirmed.