**Louis WARD, Jr., Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 53678.**

Court of Criminal Appeals of Texas, En Banc.

Nov. 15, 1978.

Rehearing Denied Nov. 28, 1979.

Motion to Withdraw Prior Opinion and Appeal Abated Jan. 9, 1980.

Bob Tarrant, Houston, for appellant.

Carol S. Vance, Dist. Atty., Clyde F. DeWitt, III and Kenneth W. Sparks, Asst. Dist. Attys., Houston, Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

ROBERTS, Judge.

This is an appeal from a conviction for murder. The jury assessed the appellant's punishment at twelve years' confinement in the Texas Department of Corrections.

The appellant contends, inter alia, that the trial judge erred by overruling the appellant's objections to three "have you heard" questions asked by the prosecutor during the guilt-innocence stage of the trial. We reverse.

The record reveals that on the evening of December 11, 1974, Arthur Johnson received a phone call from the deceased. Pursuant to that phone conversation, Johnson stopped by the deceased's house at 3213 Sumpter at approximately 8:45 a. m. on December 12, 1974, to lend the deceased some money. The deceased let Johnson in and locked the door. They then proceeded into the deceased's bedroom.

Approximately ten to fifteen minutes later a car drove up in front of the deceased's home. Dolly Aught, the deceased's next door neighbor, saw the appellant get out of his car, look around, open the trunk, get something out and put it into his pocket. The appellant then walked to the deceased's front door. The appellant knocked twice. After the first knock, the deceased looked out of her bedroom window and saw the appellant. The deceased started to pick up her purse as the appellant entered the house and came into the bedroom. The appellant had a pistol in one hand. As Johnson watched, the appellant fired two shots at the deceased. The appellant then left. Johnson went outside where he encountered a crowd of neighbors who had heard the shots. At that time he stated that "[h]e shot her and I think she's dead." Aught then called the police and an ambulance.

The police investigation revealed that there had been a forced entry, that one .22 caliber "hull" was on the floor, and that a .22 caliber pistol was found close to the deceased. The .22 caliber pistol had all six bullets in it.

The defensive testimony revealed that two days after the alleged murder the appellant turned himself in to the police. The appellant took the stand and essentially testified that he fired the shots which killed the deceased, but stated that he had been threatened by the deceased. According to the appellant, the threat was made because he was breaking up with the deceased and going back to his wife and family. He also testified that when he entered the deceased's home on the day of the shooting the deceased aimed a pistol at him.

The appellant's first three grounds of error focus on the following three "have you heard" questions which were propounded to the appellant's wife by the prosecutor on cross-examination during the guilt-innocence stage of the trial:

[BY PROSECUTOR]

"Q Mrs. Ward, have you heard that on December 27, 1972, your husband, Louis Ward, was convicted of unlawfully carrying a prohibited weapon, to-wit, a pistol, and given a one hundred dollar fine?

[DEFENSE COUNSEL]: "May it please the Court, we object to counsel's question; one, counsel is testifying; two, it's an improper predicate for impeachment; three, the matter is immaterial and it's irrelevant; it's assuming facts not yet proven and, five, it's improper attack upon this man's character.

"THE COURT: Objection is overruled.

"Q [BY PROSECUTOR] Have you heard that, ma'am?

"A No.

"Q You didn't know that he had a pistol conviction?

"A Would you say that again, please?

"Q Did you know that he had a pistol conviction?

"A What date?

"Q It was December 27, 1972.

"A Yes, I know about that pistol.

"Q Have you heard, ma'am, that on December 8th, a Sunday, approximately four to five days before the shooting, your husband, Louis Ward, encountered Dorothy Gayden [deceased] in her place of work, Avalon Drug Store, and beat her with his fists and threatened to kill her?

[DEFENSE COUNSEL]: "Object to counsel's testimony. He's assuming facts not yet proven into evidence. It's immaterial and irrelevant and, three, it's an improper predicate for impeachment of this witness or this man's character. We strenuously object to counsel testifying from something that I don't know what he has.

"THE COURT: Objection overruled.

"Q [BY PROSECUTOR]: Have you heard, ma'am, that on Tuesday, two days before the death of Dorothy Gayden [deceased], that your husband, the defendant, used his vehicle to ram the vehicle of Dorothy Gayden [deceased] and dented in her driver's side door?

"A I don't know anything about all that.

[DEFENSE COUNSEL]: "We object to this. We suggest it's hypothesis, on each of the grounds we've offered. It's the rankest form of gimmickery. We object to it.

"THE COURT: It's overruled.

"Q [BY PROSECUTOR]: Have you heard about that, ma'am?

"A I don't know anything about all of that. He wasn't that violent."

The appellant contends that although the testimony of the appellant's wife put the appellant's reputation in issue the questions did not relate to acts which were inconsistent with any character trait introduced by her testimony.

The appellant relies upon *Brown v. State*, 477 S.W.2d 617, 619–20 (Tex.Cr.App.1972), in which this Court stated:

"The general rule is that, as part of its cross-examination, the State is permitted to ask the character witness if he has heard of a specific act of misconduct. However, the State may not ask whether the witness had personal knowledge of the act, nor may the question be framed so as to imply that the act has actually been committed. The State, as a prerequisite for asking the question, must have a good faith belief that the act actually occurred. *Hart v. State*, 447 S.W.2d 944 (Tex.Cr.App.1970); *Stewart v. State*, 148 Tex.Cr.R. 480, 188 S.W.2d 167 (1945). [Footnote omitted].

\* \* \* \* \* \*

"The only requirement is that the act be inconsistent with the character trait about which the witness has testified. See *Pace v. State*, 398 S.W.2d 123 (Tex. Cr.App.1965).

\* \* \* \* \* \*

"It should be kept in mind that the purpose of the cross-examination is not to discredit the person on whose behalf the witness is testifying, but rather, the purpose is to affect the weight of the witness' testimony. *Kennedy v. State*, 150 Tex.Cr.R. 215, 200 S.W.2d 400 (1947); *Taliaferro v. State*, 143 Tex.Cr.R. 243, 158 S.W.2d 493 (1942); *Thompson v. State*, 138 Tex.Cr.R. 491, 136 S.W.2d 840 (1940). Thus, since reputation is based on hearsay, an examination as to whether the witness has heard hearsay inconsistent with his opinion is proper."

Thus, the issue is whether the three "have you heard" questions set forth above were acts inconsistent with the character traits about which the appellant's wife testified.

The testimony of the appellant's wife focused on the behavior of the appellant before and after the appellant met and became romantically involved with the deceased. Her testimony on direct examination by the appellant's counsel, in pertinent part, was as follows:

"Q Prior to the time that you met Dorothy Gayden [deceased] about three or four years ago, what type of husband was Louis Ward?

"A He was good to me and my children.

"Q Did he work on a daily basis?

"A Yes, then he was.

"Q What type of work did he do?

"A He was a truck driver.

"Q Does he drive a truck now?

"A Yes.

"Q Does he work every day?

"A Yes.

"Q Did he make good money?

"A When he was driving for Port Houston, he wasn't making as much as when he started driving for himself.

"Q Is Louis a lazy man?

"A No. He's always worked. Ever since I knowed him.

"Q Was he given to excessive drink?

"A Pardon?

"Q Did he drink a lot?

"A He never has been a drinker.

"Q Did he come home at night?

"A Yes.

"Q Was he a good father to the children?

"A Yes."

The appellant's counsel then tried to establish that the appellant had undergone a change after meeting the deceased, and that the deceased had called the appellant almost every night over a three-year period. The appellant's wife also testified that the deceased carried a gun. Thereafter, the following occurred:

"Q Has Louis Ward supported you and your family since December 12, 1974?

"A Yes.

"Q What kind of husband has he been?

"A Okay. Good.

"Q During the time that he was dating Dorothy Gayden [deceased] did he work regularly?

"A Yes, as far as I know he did.

"Q Has he supported your family as a breadwinner and also provided parental support as the father of his children? Here in the last eight months has he been a good daddy?

"A Yes.

"Q Has he been home regularly?

"A Yes, he been home as much as he can.

"Q Does he work?

"A Yes, when he can.

"Q Does he own his own truck?

"A Yes.

"Q A tractor and a trailer?

"A Yes.

"Q Has he been a good husband to you, ma'am?

"A Yes."

The State contends that the present case is controlled by *Childs v. State*, 491 S.W.2d 907 (Tex.Cr.App.1973). In *Childs* the defendant sought probation. During the punishment stage of the trial the defendant's

father testified that if the defendant was granted probation he would keep the defendant at home, employ him, supervise his conduct, and assist him in exemplary conduct. The defendant's father also testified that the defendant's conduct had been good while the defendant had been at home. On cross-examination, the defendant's father was asked if "he had heard" that his son had been indicted for robbery and for possession of marihuana and was living with a prostitute who was also a heroin addict.

The defendant contended that his father's testimony was not that of a reputation or character witness and that the questions and answers therefore were improper. This Court stated that the father's testimony was geared towards persuading the jury to grant probation to the defendant and held that:

"Appellant [defendant] may not have a witness testify about his good character traits but avoid 'placing his reputation in evidence' simply by not specifically asking whether appellant [defendant] enjoyed a good reputation in the community. . . ." *Childs v. State,* supra at 909.

■ The present case, however, is unlike *Childs.* The testimony of the appellant's wife was not geared towards a showing of good, lawful character or reputation, but was directed at proving the appellant's conduct before and after his involvement with the deceased. See *Odum v. State,* 533 S.W.2d 1 (Tex.Cr.App.1975); *Els v. State,* 525 S.W.2d 11 (Tex.Cr.App.1975).[1] This conduct was essential to the appellant's claim that the deceased had threatened him and pointed a gun at him when he entered the deceased's house on the day of the homicide. Thus, despite the appellant's admission in his brief that the testimony of his wife put his reputation in issue,[2] we conclude that the appellant's wife was not a character witness for the appellant and that the questions propounded by the prosecutor were therefore improper.

■ However, even if the testimony of the appellant's wife can be construed as making her a character witness for the appellant, her testimony raised, at most, the appellant's reputation for being a good husband and father. The prosecutor's questions were directed to the appellant's reputation for illegal activity. The prosecutor's questions therefore did not relate to acts inconsistent with the character traits the appellant's wife testified about.[3]

1. Although I dissented from the majority's disposition in *Els,* I am bound by the decision of this Court.

2. It is well established that this Court cannot accept as facts allegations in appellants' briefs which are not supported by the record. *Washington v. State,* 500 S.W.2d 485 (Tex.Cr.App. 1973); *Devereaux v. State,* 473 S.W.2d 525 (Tex.Cr.App.1971). The appellant's admission that the testimony of his wife put his reputation in issue is not supported by the record. We therefore disregard it.

3. *Cf. Aldrighetti v. State,* 507 S.W.2d 770 (Tex. Cr.App.1974), and *Salazar v. State,* 494 S.W.2d 548 (Tex.Cr.App.1973). In *Aldrighetti,* the defendant's wife testified during the punishment stage of the trial that the defendant was a good husband, supported their children, *and* that she was aware of the defendant's prior convictions. We there held that no error was presented where the prosecutor, *without an objection,* asked the defendant's wife if she had heard that the defendant had been convicted for possession of marihuana, for "a violation of the weapon's ordinance," and for selling dangerous drugs. In *Salazar,* the defendant's sister testified during the punishment stage of the trial that the defendant had been a good member of her household and that she had no reason not to believe that the defendant could not finish school and live up to the terms of probation if probation was granted. We there held that the defendant's sister was a reputation witness and that several "have your heard" questions were proper.

The witnesses in both *Aldrighetti* and *Salazar* testified to matters similar to those testified to by the appellant's wife in the present case. However, both *Aldrighetti* and *Salazar* dealt with situations where punishment was the sole issue. In *Aldrighetti,* we noted that the questions related to prior convictions which were admissible under Article 37.07, Section 3(a), Vernon's Ann. C.C.P. In *Salazar* (as in *Childs* ), we implied that the questions properly went to impeach the witness' testimony that the defendant's reputation justified probation. Thus, neither case is controlling.

Also, the fact that a man may have committed *extraneous offenses* is not necessarily inconsistent with his behavior as a husband and

We conclude that prejudicial reversible error was committed during the cross-examination of the appellant's wife.

The judgment is reversed and the cause remanded.

DALLY, Judge, dissenting.

*Childs v. State,* 491 S.W.2d 907 (Tex.Cr. App.1973); *Salazar v. State,* 494 S.W.2d 548 (Tex.Cr.App.1973); *Navajar v. State,* 496 S.W.2d 61 (Tex.Cr.App.1973); *Howard v. State,* 505 S.W.2d 306 (Tex.Cr.App.1974); *Partida v. State,* 506 S.W.2d 209 (Tex.Cr. App.1974); *Hurd v. State,* 513 S.W.2d 936 (Tex.Cr.App.1924); *Mitchell v. State,* 517 S.W.2d 282 (Tex.Cr.App.1975) and other cases cannot be distinguished from this case. If they were correctly decided the same rule should be applied to this case and it should also be affirmed. This is especially so when the appellant admits in his brief that the testimony of his wife put his reputation in issue. I dissent.

VOLLERS, Judge, dissenting.

The majority reverses this cause on the basis of improper cross-examination of a character witness. I simply cannot agree.

First of all, the majority reaches the conclusion that Mrs. Ward was not a character witness for her husband. They reach this conclusion even though the *appellant* admits that his wife's testimony put his reputation in issue. This conclusion is reached according to the majority because Mrs. Ward's testimony focused upon appellant's behavior before and after he met and became romantically involved with the deceased, in order to show that he had undergone a change after meeting the deceased. The majority distinguishes the present case from *Childs v. State,* 491 S.W.2d 907 (Tex. Cr.App.1973) because the testimony was directed at proving the appellant's conduct before and after his involvement with the deceased. Such a distinction cannot be justified either legally or factually under this record.

The testimony set out in the majority opinion shows that appellant's wife testified prior to his meeting the deceased he was good to his wife and children, he worked on a daily basis as a truck driver, he worked every day, he was not lazy, had never been a drinker, came home at night and was a good father to his children. Immediately after this testimony was elicited from appellant's wife the following occurred:

"Q  After he met Dorothy Gayden about three or four years ago did he change in any way?

A  He started staying out later sometimes."

After an objection for leading appellant's counsel then asked Mrs. Ward:

"Q  (By Mr. Watts) Mrs. Ward, were there any other changes that you noticed in Louis Ward's condition after he met Dorothy Gayden?

A  Sometimes he would be upset. Sometimes when I get a lot of phone calls and I tell him about it he say he didn't know who was calling."

An examination of the record indicates that this is the *only* testimony pertaining to any change in appellant's conduct before and after his involvement with the deceased. The appellant testified that the deceased threatened to kill him when he did not divorce his wife and when he went to see her to tell her it was all over she pointed a gun at him and he killed her. At the close of Mrs. Ward's testimony appellant's counsel again established that appellant was still supporting his family, was still a good husband, worked regularly when he was dating the deceased, came home regularly, owns his own tractor and trailer truck and has been a good husband to his wife.

In light of this testimony I simply cannot conclude that appellant's wife was not a character witness for appellant. As was

father. At most, it may inferentially rebut the witness' testimony, but it does not impeach it. In *Brown v. State,* 477 S.W.2d 617, 620 (Tex.Cr. App.1972), we held that the policy behind allowing "have you heard" questions is

". . . to affect the weight of the witness' testimony." Thus, the policy behind allowing "have you heard" questions was not served by the questions asked by the prosecutor in the present case.

pointed out in *Childs v. State,* supra, you don't have to use "magic words" about a general reputation as a peaceful and law-abiding citizen in order to become a character witness.

The position of the majority that even if she was a character witness it was at most as to appellant's reputation for being a good husband and father is no more pertinent than would have been a conclusion in *Childs v. State,* supra if the Court in that case had found that the appellant's reputation for being a "good boy" was all that was put in issue. The majority tries to create a distinction without a difference.

Last, but certainly not least, an examination of the objections made by appellant's counsel simply fails to reveal any objection which is sufficient to show the trial court that he is objecting because this is improper cross-examination of a character witness. The issue simply is not preserved for review.

For all of the reasons stated, I dissent.

DOUGLAS, J., joins.

## OPINION ON STATE'S MOTION FOR REHEARING

ODOM, Judge.

This is an appeal from a conviction for murder. On original submission the conviction was reversed because the State asked improper questions during its cross-examination of appellant's wife.

The State contended that the testimony given by appellant's wife on direct examination made her a character witness subject to cross-examination by questions asking if she had heard of specific acts of misconduct inconsistent with that character. The position urged by appellant, and accepted by the Court, was that such "have you heard" questions must inquire as to acts that are inconsistent with the specific character trait as to which the witness testified. The rule from *Brown v. State,* 477 S.W.2d 617 (Tex. Cr.App.), was quoted:

"The only requirement [for the subject matter of have you heard questions] is that the act be inconsistent with the character trait about which the witness has testified. See *Pace v. State,* 398 S.W.2d 123 (Tex.Cr.App.)."

The Court held on original submission that the witness' testimony did not make her a reputation witness, and, alternatively, even if she was a reputation witness, the questions asked by the State did not concern acts inconsistent with the character trait put in issue:

"The testimony of the appellant's wife was not geared towards a showing of good, lawful character or reputation, but was directed at proving the appellant's conduct before and after his involvement with the deceased. See *Odum v. State,* 533 S.W.2d 1 (Tex.Cr.App.1975); *Els v. State,* 525 S.W.2d 11 (Tex.Cr.App.1975). This conduct was essential to the appellant's claim that the deceased had threatened him and pointed a gun at him when he entered the deceased's house on the day of the homicide. Thus, despite the appellant's admission in his brief that the testimony of his wife put his reputation in issue, we conclude that the appellant's wife was not a character witness for the appellant and that the questions propounded by the prosecutor were therefore improper.

"However, even if the testimony of the appellant's wife can be construed as making her a character witness for the appellant, her testimony raised, at most, the appellant's reputation for being a good husband and father. The prosecutor's questions were directed to the appellant's reputation for illegal activity. The prosecutor's questions therefore did not relate to acts inconsistent with the character traits the appellant's wife testified about."

In its motion for rehearing the State attacks both holdings.[1] In its challenge to the second part of our holding on original

1. The State also argues other evidence of the same facts was admitted without objection. There was such other evidence only as to one of the three acts inquired about in the have you heard questions.

submission, the State argues, "The acts about which the State inquired are inconsistent with the character traits of kindness and sobriety about which Appellant's wife testified." Later in its motion, however, the State concedes, "The entire tenor of the wife's testimony was geared toward persuading the jury that Appellant was a *good husband, father and provider for the family.*" (Emphasis added.) The State does not explain how a misdemeanor conviction for unlawfully carrying a pistol is inconsistent with being a good husband, father, or provider for the family. We do not see how the acts related to the character trait raised, even if the wife were a reputation witness. We adhere to the second part of our holding on original submission. The act inquired about in the have you heard question must be inconsistent with the character trait testified to by the reputation witness. *Brown v. State*, supra; *Lockhart v. State*, 172 Tex.Cr.R. 209, 355 S.W.2d 514; *Villarriel v. State*, 163 Tex.Cr.R. 654, 295 S.W.2d 222; *Kennedy v. State*, 150 Tex.Cr.R. 215, 200 S.W.2d 400. This holding alone would require denying the motion for rehearing.

In the other part of the State's motion for rehearing, in which it challenges the first holding on original submission, the State argues, "The entire tenor of the wife's testimony was geared toward persuading the jury to accept Appellant's defense by proving his good character and law-abiding habits." Because of the importance of this other issue in the case, upon which the judgment was reversed, we will also address the application of *Childs v. State*, 491 S.W.2d 907 (Tex.Cr.App.), and the question of whether appellant's wife was a reputation witness subject to the pursued mode of cross-examination whatsoever.

The core of the *Childs* rule is this paragraph:

"True, appellant's counsel did not use the 'magic words,' does your son have a general reputation of being a peaceable and law abiding citizen in the community in which he resides, in questioning the witness. However, an examination of the record clearly indicates that the entire tenor of the elder Childs' testimony was geared toward persuading the jury to grant appellant probation by showing them his good character and law abiding habits.[1] Appellant may not have a witness testify about his good character traits but avoid 'placing his reputation in evidence' simply by not specifically asking whether appellant enjoyed a good reputation in the community."

"[1] See *Brown v. State*, 477 S.W.2d 617, for a discussion of the rationale of the rule which permits the State to ask a character witness about specific acts of misconduct of the accused."

The fallacy in the *Childs* rule is that it ignores the difference between character and reputation. Although it cites the *Brown* discussion of the rationale for have you heard questions, the *Childs'* rule is inconsistent with that rationale. Here is the *Brown* discussion of that rationale:

"The rationale behind the rule is that reputation is an opinion based on hearsay. The reputation witness states his opinion based on that which he has heard from others concerning the defendant. In order to test this opinion, the prosecution is allowed to determine whether the witness has *heard* (not whether he *knows*) of acts or reports which would be inconsistent with a good reputation. The theory is that if the witness is truly familiar with the reputation of the defendant, he will have also heard of adverse reports which are circulating in the community. This is consistent with the nature of reputation evidence, that is, an opinion based on hearsay. . . .

"   . . .

"It should be kept in mind that the purpose of the cross-examination is not to discredit the person on whose behalf the witness is testifying, but rather, the purpose is to affect the weight of the witness' testimony. *Kennedy v. State*, 150 Tex.Cr.R. 215, 200 S.W.2d 400 (1947); *Taliaferro v. State*, 143 Tex.Cr.R. 243, 158 S.W.2d 493 (1942); *Thompson v. State*, 138 Tex.Cr.R. 491, 136 S.W.2d 840 (1940).

Thus, since reputation is based on hearsay, an examination as to whether the witness has heard hearsay inconsistent with his opinion is proper."

■ Since the purpose of a have you heard question is to test the witness who purports to be familiar with hearsay and rumors of the accused's reputation, a witness who has not professed to be familiar with that reputation in the community could not logically be discredited by questions of whether he has heard other rumors of acts inconsistent with that reputation. Simply stated, there is no reasonable basis for asking have you heard questions of a witness who testifies to his personal opinion of someone's character, as opposed to the reputation of that person's character. Since appellant's wife was not testifying to his *reputation,* no have you heard questions to test familiarity with that reputation should have been allowed at all.

■ On the other hand, it is not proper to prove character by evidence of personal opinion or specific acts. *Houghton v. State,* 171 Tex.Cr.R. 191, 345 S.W.2d 535; *Lutz v. State,* 146 Tex.Cr.R. 503, 176 S.W.2d 317; *Brown v. State,* 92 Tex.Cr.R. 147, 242 S.W. 218; *Brownlee v. State,* 13 Tex.App. 255; McCormick & Ray, Texas Law of Evidence, Sec. 1432. Yet, when such improper evidence is admitted, the State may not under the guise of rebuttal present additional improper evidence. *Johnson v. State,* 91 Tex. Cr.R. 582, 241 S.W. 484 (on motion for rehearing). Apart from these limitations on how character may be proven, evidence similar in appearance to improper proof of character may be admissible for other purposes, such as to show the defendant's conduct, appearance or condition of mind at a particular time, or the relationship between the accused and the deceased, without subjecting the witness to have you heard questions on cross-examination. See, *Odum v. State,* 533 S.W.2d 1 (Tex.Cr.App.); *Els v. State,* 525 S.W.2d 11 (Tex.Cr.App.); *Clark v. State,* 500 S.W.2d 469 (Tex.Cr.App.); *Hurt v. State,* 480 S.W.2d 747 (Tex.Cr. App.); V.T.C.A., Penal Code Sec. 19.06.

■ In this case, although some of the testimony of appellant's wife had the appearance of improper opinion testimony of appellant's character, it was apparently offered to show the effects and changes in his behavior associated with his relationship with the deceased, and in any event was not offered as testimony of his reputation in the community. Therefore, in no event did it authorize have you heard questions on cross-examination. Absent a showing that the witness was familiar with and testifying to the reputation in the community, such questions were without probative value on their only authorized purpose (i. e. to test sincerity and familiarity with that reputation), and could only serve the impermissible purpose of prejudicing the jury by showing rumors of inadmissible acts of misconduct by the accused. To the extent that *Childs v. State,* supra, authorized use of have you heard questions in the cross-examination of any witness who gave testimony that might be seen as reflecting upon character, even though no *reputation* testimony was given, that case was unsupported by precedent and by reason, and it is overruled.

The State's motion for rehearing is denied.

## ON MOTION FOR REHEARING

DOUGLAS, Judge, dissenting.

The majority denies the State's motion for leave to file a motion for rehearing. The objections made at the trial are not the same as the contentions on appeal. See the majority opinion on original submission. The matter is not properly before us for review. On original submission it held that the testimony by appellant's wife that he was good to her and his children, worked daily, had never been a drinker, came home at night, did not make her a reputation or character witness. The majority states that the testimony by appellant's wife on direct examination was concerned merely with the "behavior of appellant before and after the appellant became romantically involved with the deceased" and did not make her a character or reputation witness. What new

rule of law is this that permits one to prove character for a limited period of time yet the witness does not become a character witness? This case is contrary to *Childs v. State*, 491 S.W.2d 907 (Tex.Cr.App.1973), as noted by the dissenting opinions on original submission. In *Childs*, the proof that the accused had been a good boy since he had been home was for a limited period. The majority noted that Childs asked for probation and would leave the impression that appellant did not. The appellant in the present case made an application for probation. He wanted to show that he was a good man so that he could get probation regardless of what else he wanted to show. In the *Childs* case, the father of the defendant was asked by defense counsel: ". . . And has his conduct been good since he has been there while he has been there at home?" He answered: "Really has."

The Court wrote:

". . . Appellant may not have a witness testify about his good character traits but avoid 'placing his reputation in evidence' simply by not specifically asking whether appellant enjoyed a good reputation in the community. The Court did not err in permitting the cross-examination."

The Court held that it was proper for the prosecutor to determine whether or not the witness had heard of acts inconsistent with Childs' good reputation. The *Childs* opinion was well reasoned and it was unanimous.

There was much more detail in proving character in the present case than in the *Childs* case.

It makes no difference at what time the witness testifies that a defendant has been a good man, the issue of character or reputation is raised.

When a witness testifies that a defendant is a good man, this is testimony of character. It makes no difference that the wife's testimony was that there was a slight change in the appellant after he met the deceased. She testified that he was a good husband and a good father and had never been a drinker. This was the kind of testimony that is offered in most cases where probation is sought to make a good impression before the jury.

Character is distinct from reputation, which is merely evidence of character. See McCormick and Ray, Texas Law of Evidence, Section 1324.

When one testifies that another is a good man, this is testimony of good character. This is proved ordinarily by proof of good reputation. When one so testifies, he has, before the opinion by the majority in this case, been subject to cross-examination by questions if the witness had heard of acts on the part of a defendant inconsistent with good reputation.

Now, according to the opinion of the majority, one may have witnesses testify that accused is a saint, and the State cannot test the knowledge of the witnesses and find out upon what he has based his testimony. This has not been the rule before and should not be the rule now. In short, if counsel does not ask about the word "reputation" in proving that an accused is a good man, then a false impression will be left with the jury.

The new rule, as of today, is that one may prove character by a witness but that witness is not a character witness if such testimony covers a limited period. There has never been such a rule and it should not be the rule now.

Trial judges should be able to rely upon past decisions of this Court and not be reversed on some sort of tenuous reasoning. The majority has to overrule the *Childs* case, supra, to reach its erroneous result.

The holding today prevents the asking of have you heard questions where specific acts are admitted to show traits of good character of a defendant. Will the majority hold that the State may prove specific acts of misconduct of a defendant to rebut a false impression left before the jury? Following the rule to its logical conclusion, the State should be allowed to ask a witness who has testified to specific examples of good character traits of a defendant if he or she knows of certain specific acts of bad conduct to rebut that testimony.

Trial judges will no doubt tend to limit a defendant to proof of general reputation and deny proof of specific acts because of the majority opinion.

The motion should be granted and the judgment should be affirmed.

## OPINION ON MOTION TO WITHDRAW THE PRIOR OPINIONS AND ABATE THE APPEAL

TOM G. DAVIS, Judge.

It has now been made known to this Court by proper motion by the State, accompanied by a duly certified death certificate, that appellant died on April 7, 1979, while the State's Motion for Rehearing was pending in this Court, but before the mandate of this Court issued.

Accordingly, the mandate will not be issued in this case and the appeal is abated. The State's motion to withdraw the prior opinions is denied.