Ozell **HINES**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 48924.

Court of Criminal Appeals of Texas.

Nov. 13, 1974.

Charles Scarborough, Abilene, for appellant.

Ed Paynter, Dist. Atty., and Bud Arnot, Asst. Dist. Atty., Abilene, Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

The appellant was convicted of murder without malice by automobile under Article 802c, Vernon's Ann.P.C., with punishment assessed by the jury at three (3) years' confinement in the Texas Department of Corrections.

It was developed by the State's witnesses and the appellant's own testimony that on the afternoon of May 13, 1973, the appellant was driving his 1966 green and black Pontiac automobile in an easterly direction on Interstate Highway 20 between Sweetwater and Abilene. Testimony established that a light rain was falling in that area and, as a result, the highway was somewhat slick. At approximately 5:30 p. m. at a point three (3) miles east of the town of Merkel, the appellant's automobile went out of control, left the east bound lanes of Highway 20, crossed the median and collided in the west bound lanes with a west bound Chrysler automobile. The lone occupant of the west bound automobile was pinned in his vehicle and died at the scene shortly after the collision. Witnesses at the scene testified that the appellant and

his passenger smelled of alcohol, and one witness expressed the opinion that appellant was intoxicated. Two investigating Highway Patrolmen found one half-pint bottle of whiskey, which was one-half empty, and two empty broken bottles of wine in the appellant's vehicle. The appellant and his passenger, Parish, were placed under arrest and taken to a hospital where blood samples were drawn from them. Officer Morgan, who saw both men at the hospital, expressed the opinion that both were intoxicated. Appellant testified that he and Parish had purchased two six packs of beer earlier in the day and he had consumed only three beers by the time of the collision.

The blood samples were then given to the Department of Public Safety for analysis. The chemist who analyzed the blood testified that the appellant's blood was 0.-24%[1] alcohol by weight and a man of the appellant's size would need to consume at least six (6) beers in one hour to attain such a reading. The appellant, testifying in his own behalf, stated that he had consumed only three (3) beers during the whole afternoon and had not drunk any whiskey or wine.

■ In ground of error # 1 the appellant contends that the trial court erred in allowing into evidence the analysis of the blood sample taken from appellant, as there was no testimony from the person who actually withdrew the blood sample.[2] The State's evidence reveals that approximately one and one-half (1½) hours following the collision a blood sample was taken from

the appellant with his consent[3] at Hendrick Memorial Hospital by Garnet Gale Harrell, a qualified medical technologist.

Highway Patrolman Morgan was present and testified the blood sample was extracted by needle and placed in a vial he held. At the time of the trial Mrs. Harrell was no longer employed by the hospital, had left Abilene with her husband and was not called as a witness. Joe McGinnis, laboratory supervisor at the hospital, testified Mrs. Harrell had three years of college and one year's training under a pathologist in an approved school of medical technology. He testified she was a qualified medical technologist under the rulings of the American Society of Clinical Pathologists. He then related the general procedure employed in the hospital for taking blood samples,[4] though he acknowledged he was not present when the sample in question was taken.

Appellant contends the record does not show whether the technician used alcohol to cleanse the arm before extracting the sample and, if she did, the blood test would be invalid and untrustworthy. He contends that in absence of testimony from the technician as to what procedure she used the court erred in admitting evidence of the blood test. He cites Brown v. State, 156 Tex.Cr.R. 144, 240 S.W.2d 310 (1951). Brown, however, was reversed because it was not shown that the blood specimen examined by the chemist was taken from the defendant. In the instant case the chain of custody was clearly established.

The blood here was extracted in a hospital environment by a qualified medical

---

1. Under Article 802f(3), Vernon's Ann.P.C., in effect at the time of the trial, it is presumed that a person is intoxicated if his blood shows a reading of .10% or more alcohol by weight. This section has been reenacted without change in Article 6701*l*–5(3), Vernon's Ann.Civ.St.

2. It should be pointed out that the appellant does not complain on appeal that either the chain of custody for the blood sample was not established or that such sample was tampered with.

3. In his testimony appellant related it was without his consent. Cf. Olson v. State, 484 S.W.2d 756 (Tex.Cr.App.1972).

4. The usual and accepted procedure was testified to be:
   1) get patient's permission to take the blood sample;
   2) cleanse the arm with hydrogen peroxide or other non-alcoholic disinfectant;
   3) draw the blood with sterile needle and disposable syringe;
   4) squirt the blood into a tube provided by the highway patrolman, seal the tube and return it to the officer.

technologist who was trained to follow the certain procedure of the hospital in extracting blood under the conditions here described. There is no testimony that it was improperly done by either Officer Morgan or by appellant in his testimony, both of whom were present. On appeal appellant only seizes upon the absence of the medical technologist to suggest that alcohol might have been used as a cleansing agent. When the exhibit was offered, the objection was that there was "a missing witness in the chain of command." As noted earlier, the chain of custody was established and there is no suggestion that anyone tampered with the blood sample. Appellant's contention is overruled.

Next, appellant contends the trial court erred in failing to grant his motion for an instructed verdict of not guilty because the State failed to prove by legal and competent evidence the cause of death. The record reflects that the Pontiac driven by the appellant went out of control while in east bound lanes of Interstate #20, crossed the median and struck a Chrysler driving in the west bound lane. The deceased was the driver and lone occupant of the Chrysler. Charles Doss, who witnessed the collision, testified that the Chrysler had only one occupant and following the collision the driver was pinned in the car, that "the steering wheel was back sort of into him," that when he reached the Chrysler he thought the driver was alive since the driver made a slight movement, but that a little later a woman on the other side of the car said the driver had no pulse although she had detected one earlier. Doss' wife testified when she reached the Chrysler the driver appeared dead. John Nolly Weaver testified he was unable to feel any pulse of the driver shortly after the collision.

Highway Patrolman Charles Poe, with five years' experience as a patrolman, testified he arrived after the collision and found the driver of the Chrysler still pinned in the car and, upon removing the driver from the car, discovered from his billfold that his name was Thomas Milton Brittain. He further testified that based upon his experience and training and his investigation on the scene in his opinion the death of Brittain was caused by the Pontiac "hitting" the Chrysler. On cross-examination he testified the cause of death was multiple lacerations about the head and that the chest was struck by the steering wheel, but on further cross-examination he acknowledged he was not qualified to give a medical opinion as to the cause of death.

■ Although Poe indicated a Justice of the Peace was called to the scene to pronounce the deceased dead, there is nothing in the record to indicate that such official ever arrived and did so. It appears no autopsy was performed and no physician, nurse or undertaker testified. Thus, the foregoing constitutes all of the evidence bearing on the cause of death.

In 29 Tex.Jur.2d, Homicide, Sec. 180, p. 282, it is written:

"Opinion evidence is not the only mode of establishing the cause of the decedent's death; circumstantial evidence may fully suffice for this purpose. It is not necessary to establish by the testimony of a physician the fact that the wounds inflicted by the defendant caused the death; it is sufficient if it appears from all the evidence that the wounds were sufficient to cause death, and that death occurred within a reasonable time after the wounds were inflicted. It is permissible to show the good health of the deceased prior to a shooting, his condition thereafter and his subsequent death."

See 4 Branch's Ann.P.C., 2d ed., Sec. 2212, p. 569. See also Jennings v. State, 154 Tex.Cr.R. 211, 226 S.W.2d 126, 128 (1950); Tellez v. State, 162 Tex.Cr.R. 456, 286 S.W.2d 154 (1955); White v. State, 165 Tex.Cr.R. 339, 306 S.W.2d 903 (1957), cert. denied, 355 U.S. 936, 78 S.Ct. 420, 2 L.Ed.2d 419 (1958); Morris v. State, 168

Tex.Cr.R. 29, 322 S.W.2d 632 (1959); Madden v. State, 171 Tex.Cr.R. 80, 344 S.W.2d 690 (1961); Williams v. State, 464 S.W.2d 114 (Tex.Cr.App.1971).

■ In the instant case the record shows the deceased, estimated by various witnesses as being between thirty and fifty, apparently in good health, driving a Chrysler automobile in a westerly direction on Interstate # 20 when it was struck without dispute by the Pontiac driven by the appellant. Shortly thereafter, the deceased is found to have no pulse and to be pinned in the car. Other testimony shows he was dead when he was removed from the car, having suffered multiple head lacerations and a crushed chest.

While meager, we conclude that the evidence is sufficient to establish the cause of death, and the court did not err in overruling the motion for instructed verdict. See Gage v. State, 146 Tex.Cr.R. 305, 174 S.W.2d 491 (1943); Thompson v. State, 38 Tex.Cr.R. 335, 42 S.W. 974 (1897).

■ Appellant would further have us consider his contention that the indictment did not allege in plain and intelligible words how the offense was committed and the court erred in overruling his motion for instructed verdict.

The indictment is in the form recommended by Willson's Texas Practice, Criminal Forms, 7th ed., Sec. 1668. The form was approved by this court in McCreary v. State, 165 Tex.Cr.R. 436, 307 S.W.2d 948 (1957). We conclude the form is sufficient to comply with the requirements of Article 21.02, Vernon's Ann.C.C.P.

For the first time on appeal appellant contends that the trial court incorrectly charged the jury on the penalty provisions of Article 802c, Vernon's Ann.P.C. (murder by automobile) when the proper punishment was that set out Article 6701d, Sec. 50A(a), (b), Vernon's Ann.T.C.S.

Such later statute reads as follows:

"(a) Whoever shall unlawfully and unintentionally, (with a conscious disregard for the rights of others) cause the death of another person while engaged in the violation of any State law or municipal ordinance applying to the operation or use of a vehicle or streetcar or to the regulation of traffic shall be guilty of homicide when such violation is the proximate cause of said death.

"(b) Any person convicted of homicide by vehicle shall be fined not less than Five Hundred Dollars ($500) nor more than Two Thousand Dollars ($2,000), or shall be imprisoned in the county jail not less than three (3) months nor more than one (1) year, or may be so fined and so imprisoned; provided, however, that such person may be tried only upon indictment by a grand jury and may be tried only in the county where the violation occurred." (Acts 1971, 62nd Leg., p. 730, ch. 83, Sec. 19, eff. Aug. 30, 1971).

Article 802c, supra, provides as follows:

"Any person who drives or operates an automobile or any other motor vehicle upon any public road or highway in this State, or upon any street or alley or any other place within the limits of an incorporated city, town or village, while such person is intoxicated or under the influence of intoxicating liquor, and while so driving and operating such automobile or other motor vehicle shall through accident or mistake do another act which if voluntarily done would be a felony, shall receive the punishment affixed to the felony actually committed." [5]

In Thomason v. State, 388 S.W.2d 700 (Tex.Cr.App.1964), it was held that the purpose of Article 802c, supra, was to make applicable to the misdemeanor offense of drunken driving elements of accident and mistake contained in the statute (Article 42, P.C.) prescribing punishment affixed to felony actually committed

5. Now see V.T.C.A. Penal Code, Section 19.05(a)(2) (effective January 1, 1974).

through mistake or accident by a person who had intention to commit another felony.

It should be remembered that when the Legislature in 1941 reduced the offense of driving while intoxicated from a felony to a misdemeanor it added Article 802c, supra. While driving while intoxicated was a felony, the courts relied upon Article 42, Vernon's Ann.P.C., to make death caused by a drunk driver a felony murder, see Fox v. State, 145 Tex.Cr.R. 71, 165 S.W.2d 733 (1942). Since that foundation was removed when driving while intoxicated became a misdemeanor, Article 802c was needed to construct an intent to kill out of the drunkenness. As said in Greiner v. State, 157 Tex.Cr.R. 479, 249 S.W.2d 601, 605 (1952), "[t]he act done by accident or mistake is chargeable to the person engaged in the unlawful act as though intentionally done." See also Thomason v. State, supra, and cases there cited.

■ We do not find the two statutes to be in such conflict that they cannot be reconciled, nor do we agree that Article 802c, Vernon's Ann.P.C., was repealed by implication since Article 6701d, Sec. 50A(a), (b), supra, was enacted at a later date. See and cf. Grant v. State, 505 S.W.2d 279 (Tex.Cr.App.1974).

■ Article 6701d, Sec. 50A(a), (b), supra, did not expressly repeal Article 802c, supra, and repeals by implication are not favored. Grant v. State, supra; Berry v. State, 69 Tex.Cr.R. 602, 156 S.W. 626, 635–636 (1913).

As can be observed, Article 6701d, Sec. 50A(a), (b), supra, is a broad and general statute applicable to different factual situations, while Article 802c, supra, is a special statute directed to the situation where the death results from the automobile driven by an intoxicated driver. The statutes are in pari materia and when construed together can be harmonized and given effect with the special governing the general in

the event of any conflict. See 53 Tex. Jur.2d, Statutes, Sec. 186, p. 280.

Appellant's contention is overruled.

Lastly, appellant urges that the court erred in permitting the prosecutor to cross-examine defense reputation witnesses about his convictions which did not occur in a court of record. Particularly, appellant complains of the "have you heard" questions concerning convictions for being drunk in a public place being asked of the said witnesses during the penalty stage of the trial. He relies upon Pace v. State, 396 S.W.2d 123 (Tex.Cr.App.1966), which held that reputation witnesses may not be asked if they had heard an accused had been charged with speeding, running a red light or minor offenses peculiar to military law. See also Gaines v. State, 481 S.W.2d 835, 837 (Tex.Cr.App.1972). He seeks to equate the offenses mentioned in Pace to public drunkenness.

■ First, there is nothing to show that convictions referred to did not occur in a court of record. Courts not of record do not have exclusive jurisdiction over the offense of being drunk in a public place. Here, the appellant was charged with murder by automobile while driving while intoxicated under the provisions of Article 802c, Vernon's Ann.P.C. The reputation witnesses had testified on direct examination that appellant's general reputation for being a peaceful and law-abiding citizen was good. Under such circumstances the State is permitted to ask such witnesses if they have heard of a specific act of misconduct inconsistent with the reputation to which they testified. See Brown v. State, 477 S.W.2d 617, 620 (Tex.Cr.App.1972). We know of no limitation of that right because the offense involves public drunkenness or because the conviction therefor did not occur in a court of record.

■ Article 37.07, Sec. 3(a), Vernon's Ann.C.C.P., provides that at the penalty stage of a bifurcated trial evidence may be offered by either party as to the prior

criminal record of the accused and the term "prior criminal record" means a final conviction in a court of record, or a probated or suspended sentence that has occurred prior to trial *or any final conviction material to the offense charged.*"

Proof of the "prior criminal record" of an accused and the proper cross-examination of reputation witnesses are not to be confused. Article 37.07, supra, is not a limitation upon such cross-examination.

Appellant's contention is overruled.

The judgment is affirmed.