William EVANS, Appellant,

v.

The STATE of Texas, State.

No. 2-86-046-CR.

Court of Appeals of Texas, Fort Worth.

May 7, 1987.

Rehearing Denied July 30, 1987.

Zachry, Kearney, Hill, Beatty & Butcher and Allan K. Butcher, Fort Worth, for appellant.

Tim Curry, Dist. Atty., and David L. Richards, Asst. Dist. Atty., Fort Worth, for state.

Before JOE SPURLOCK, II, FARRIS and KELTNER, JJ.

OPINION

JOE SPURLOCK, II, Justice.

William Evans appeals his conviction by a jury for the offense of aggravated robbery with a deadly weapon. *See* TEX.PENAL CODE ANN. sec. 29.03 (Vernon 1974). Evans plead not guilty, and after being found guilty by the jury, he admitted the enhancement paragraph alleging one prior felony conviction. The jury assessed punishment at life confinement in the Texas Department of Corrections.

We reverse.

In his first point of error, Evans complains the trial court erred in refusing to grant his motion for mistrial after the prosecutor improperly injected details of a prior murder conviction during the punishment phase of the trial. In response, the State argues the point is meritless because the trial court sustained Evans' timely objection to the question, and instructed the jury to disregard it. The State further maintains the prosecutor's question was proper to test the witness' familiarity with Evans' reputation.

After the jury's verdict of guilt, Evans plead true to the enhancement paragraph of the indictment. The paragraph alleged he was convicted of murder with malice, a felony, in July, 1973, and such conviction became final prior to the commission of the aggravated robbery. The enhancement paragraph contained no additional details concerning the prior conviction. As its punishment case, the State offered the testimony of one witness, an identification officer with the Tarrant County Sheriff's Department. She verified Evans' identity as the person who was convicted of murder with malice in 1973 by comparing his fingerprints to those found in the pen packet. The pen packet and the fingerprints were admitted into evidence. The pen packet was void of any details of the prior conviction, except that the offense was murder with malice, and Evans plead guilty. The indictment of the murder with malice was not included in the pen packet and was not otherwise introduced into evidence. After this testimony, the State rested and presented no further evidence.

The appellant called his cousin, L.V. Evans, who testified, among other things, that he had knowledge of Evans' felony conviction for murder with malice in Tarrant County in 1973. He also testified that *since* that conviction, he was acquainted with Evans' reputation for being a peaceful and law abiding citizen, and that that reputation was good. On cross-examination, the first and only question the prosecutor asked L.V. Evans was:

Q. Have you heard that on the 9th day of April, 1973, that the Defendant was—that the Defendant murdered a child under the age of fourteen?

MR. ANDERSON: Now, I'm going to object—

THE COURT: Come up here.

MR. ANDERSON: —and ask the Court to instruct the Jury not to consider that and ask the Court to grant a mistrial.

[Discussion is had at the bench outside the hearing of the Reporter and the Jury.]

THE COURT: I'm going to sustain the objection and instruct the Jury to disregard the last question of Counsel and they will consider it for no purpose.

MR. ANDERSON: At this time, I'd request the Court to grant a mistrial.

THE COURT: Denied.

MR. LEVY: I have no further questions.

Following this exchange the witness was excused, closing arguments were made, and the jury retired to consider punishment.

Evans argues the motion for mistrial should have been granted. First, he argues the prosecutor's question was in violation of TEX.CODE CRIM.PROC.ANN. art. 37.07 sec. 3(a) (Vernon Supp.1987) because it injected details of the prior offense before the jury. Second, Evans maintains the question was not rendered harmless by the timely objection and instruction to disregard because the question was clearly calculated to inflame the minds of the jurors and was of such a character that the impression it produced could not be withdrawn from the minds of the jurors.

Third, Evans alleged during oral argument, that the question was beyond the scope of cross-examination of a reputation witness because it inquired about bad conduct occurring prior in time to the period about which the witness testified he was familiar with Evans' good reputation for being peaceful and law abiding.

Article 37.07 section 3(a) of the Code of Criminal Procedure sets out the evidence permitted during the punishment phase of the trial:

Sec. 3 evidence of prior criminal record in all criminal cases after a finding of guilty.

(a) Regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may, as permitted by the Rules of Evidence be offered by the state and the defendant as to the prior criminal record of the defendant, his general reputation and his character. The term prior criminal record means a final conviction in a court of record, or a probated or suspended sentence that has occurred prior to trial, or any final conviction material to the offense charged. *Id.*

 Under section 3(a), a prior criminal record may only be introduced to show the fact of a conviction, but not the details of the offense. *See Johnson v. State,* 650 S.W.2d 784, 792 (Tex.Crim.App.1983); *Carter v. State,* 614 S.W.2d 821, 824 (Tex.Crim. App.1981); *Walker v. State,* 610 S.W.2d 481, 483 (Tex.Crim.App.1980); *Mullins v. State,* 492 S.W.2d 277, 279 (Tex.Crim.App. 1973). Evans contends the question was erroneous because it injected the detail that the prior conviction was for *murder of a child under the age of fourteen.* Conversely, the state maintains the question was legitimate to cross-examine the witness' familiarity with Evans' reputation, and such cross-examination is not limited by article 37.07 section 3(a). *See Hines v. State,* 515 S.W.2d 670, 675–76 (Tex.Crim. App.1974). After reviewing the record, and the authorities in support of both arguments, we hold the question was improper and clearly falls within the holding of *Walker v. State,* 610 S.W.2d at 483–84. If

the *Walker* rule is ever to have meaning, this is a clear-cut case for its application.

In *Walker*, during the punishment stage, the State introduced the fact of a prior conviction for incest through copies of the former judgment and sentence. Prior to the introduction of these two exhibits, an order in limine was granted to prohibit the prosecution from mentioning or otherwise alluding to facts or details of the final conviction. Following the admission into evidence of the two exhibits, the State rested. *Id.* at 481–82. The defense then put on several witnesses in behalf of the defendant. One of the witnesses, the defendant's sister, testified, among other things, that Walker had had a nervous problem for several years and had been hospitalized for this condition. On cross-examination, the prosecutor asked whether the witness knew if Walker was nervous when he committed the offense of incest *with his daughter. Id.* at 482. After an objection and a lengthy discussion at the bench, the trial judge denied the motion for mistrial. *Id.* Although in that case the prosecutor's question violated an order in limine, it is clear the Court based its reversal on the impropriety of the question: "[i]n introducing evidence of prior convictions as against an accused, the State is not permitted *to allude to or in any way bring before the jury* the fact surrounding the commission of the offense forming the basis for such a conviction". *Id.* at 483. (Emphasis ours).

The *Walker* court went on to hold that the question was deliberate prosecutorial misconduct which was clearly calculated to inflame the minds of the jurors and was of such character so as to suggest the impossibility of withdrawing the impression produced on their minds. *Id.* at 484.

Likewise we find this case an example of deliberate prosecutorial misconduct, one that is not controlled by the general rule that an instruction to disregard will cure any error. *See Coe v. State,* 683 S.W.2d 431, 436 (Tex.Crim.App.1984) (en banc); *Carter v. State,* 614 S.W.2d 821, 824–25 (Tex.Crim.App.1981); *Thompson v. State,* 612 S.W.2d 925, 928 (Tex.Crim.App.1981). We find the question was calculated to inflame the minds of the jurors as revealed by the testimony of the prosecutor himself during the hearing on perfecting a bill:

Q. [By Defense Counsel] Directing your attention to the portion of the trial on the issue of punishment before the Jury, do you recall having asked this question of the Defense witness, L.V. Evans. "Have you heard on the 9th day of April, 1973, that the Defendant was— that the Defendant murdered a child under the age of fourteen?"

Did you ask that question?

A. [By Prosecutor] Yes, I did.

Q. Now, at that time, were you aware that the Defendant had pled true to the enhanced penalty alleged in the indictment?

A. Yes.

Q. Were you aware that Mr. L.V. Evans had been asked the question by me if he knew or had—if he was aware that Mr.—the Defendant, William Evans, had been convicted of murder?

A. I'm not sure you asked that. I don't know how you asked it, but if you had asked it, it wouldn't have made any difference. I would have still asked the question I asked.

Q. All right. Were you aware that my question was concerning the Defendant's reputation since that conviction?

A. No.

Q. Up to date.

A. No.

Q. Did you hear me ask that question of L.V. Evans?

A. If that's what you asked, I'll accept your characterization of it. It wouldn't have made any difference in my question.

The testimony continued:

Q. [By Defense Counsel] What was the purpose of your phrasing the question as you did?

A. [By Prosecutor] To test the Defendant's reputation. Or the ability of this reputation witness to testify concerning the Defendant's actual reputation in Tarrant County, Texas. The phraseology being somewhat different than you asked because while a murder

conviction might not cause much community discussion since there's a lot of murders, a beating a child to death is likely to cause a lot of community comment.

Q. And it was your intention to get the facts of the case before the Jury?

A. It was my intention to test the qualifications of your reputation witness.

Q. In doing that, you wanted the facts of that prior conviction before the Jury.

A. Doing that inevitably led to that result, yes.

Q. Well, that was your intention?

A. Well, you know, *my intention was to ask the question* that I asked knowing what the result would be.

Q. Knowing that you were getting facts of a prior conviction—

A. Sure. That was going to happen.

Q. —before the Jury?

A. Sure. That is an inevitable result of the question.

Q. That was your intent, though, wasn't it?

A. My intent was to do what the law allows me to do which is test your reputation witness.

[Emphasis added.]

We find this testimony sufficient to show the question was calculated to inflame the minds of the jurors and was not cured by the instruction. *See Walker*, 610 S.W.2d at 483–84. We further find this case distinguishable from those cases in which the error was cured by an instruction and the injected detail was not inherently prejudicial. *See King v. State*, 679 S.W.2d 541, 543 (Tex.App.—Amarillo 1984, pet. ref'd) (error cured when the question was whether defendant's prior conviction for carrying an unlawful weapon was a *handgun*); *Johnson v. State*, 650 S.W.2d at 792 (error harmless when defendant asked if prior assault conviction involved a *weapon*).

We also determine the error was not harmless because a reasonable probability exists that the punishment would have been assessed differently by the jury had it not been informed of the details of the prior conviction, that is, that the punishment assessed was affected by the improp-

er question asked. *See Schneble v. Florida*, 405 U.S. 427, 432, 92 S.Ct. 1056, 1060, 31 L.Ed.2d 340, 345 (1972); *Johnson v. State*, 660 S.W.2d 536, 538 (Tex.Crim.App. 1983); *Clemons v. State*, 605 S.W.2d 567, 571 (Tex.Crim.App.1980). The jury *might* have assessed the maximum punishment without the taint, yet as easily, under the evidence, it might not have. The jury did assess punishment at life confinement in the Texas Department of Corrections, which is the maximum punishment for a first degree felony with one prior felony conviction. *See* TEX.PENAL CODE ANN. sec. 12.42(c) (Vernon Supp.1987).

We note the prosecutor expected his question would affect the jury because of his testimony that "a murder conviction might not cause much community discussion since there's a lot of murders, a beating a child to death is likely to cause a lot of community comment" and that he knew the result of his question would be to put these facts before the jury, presumably to discuss them during its deliberations. We do not understand a highly qualified prosecutor, during the last few minutes of a trial with a good clean conviction obtained by the lead prosecutor for the offense of *aggravated robbery with a deadly weapon*, with a defendant who has plead true to an enhancement count alleging a *prior murder conviction*, unnecessarily tainting the jury's consideration of punishment with deliberate improper cross-examination. The injustice in the question is the prosecutor's attempt to have the jury punish the defendant again for his first crime, not solely to punish the defendant for the facts underlying his second conviction and his failure to conform his subsequent conduct to the law.

The State in its argument nevertheless has contended that although the details of the first crime are not admissible as a prior conviction, they could be for "reputation" or "have you heard" purposes. It suggests the Court of Criminal Appeals would support this logic. We decline to agree. This argument is analogous to calling a skunk a house-cat, solely because you've dipped it into white paint. A skunk of any color smells the same in the jury box. When

**708**

clearly inadmissible for one purpose, to permit admission under a guise for a "different" purpose, would make a mockery of the rule. This was clearly not a question of "reputation", but a deliberate act by the prosecutor to furnish inadmissible evidence to the jury.

 We need not address Evans' third contention that the question was improper to test the witness' familiarity with Evans' reputation about conduct which had occurred prior in time to the period about which the witness testified that he knew Evans' reputation was good. We have concluded above that the court erred and that the error harmed Evans. We note as a general rule, that the State must limit its impeachment by have you heard questions to specific instances of conduct inconsistent with the character trait to which the witness has testified. *Livingston v. State,* 589 S.W.2d 395, 402 (Tex.Crim.App.1979); *see also Green v. State,* 682 S.W.2d 271, 296 (Tex.Crim.App.1984); *Brown v. State,* 477 S.W.2d 617, 620 (Tex.Crim.App.1972); *Villarriel v. State,* 163 Tex.Cr.R. 654, 295 S.W.2d 222, 223 (1956). In this case, on direct examination the witness testified he was familiar with Evans' reputation for being a peaceful and law abiding citizen *since* the prior conviction. The prior conviction itself was admitted and the witness knew of it. The question: "[h]ave you heard that on the 9th day of April, 1973 that the Defendant was—that the Defendant murdered a child under the age of fourteen" did not test the witness' familiarity with Evans' reputation for being peaceful and law abiding since the conviction in 1973. However, in light of our foregoing holdings, we make no finding on this part of point of error one raised during oral argument and in a supplemental brief, otherwise sustaining the point of error.

In his remaining points of error, Evans challenges the constitutionality of TEX. CODE CRIM.PROC.ANN. art 37.07 sec. 4(a) (Vernon Supp.1987). This court has previously determined that the statute, which allows the judge to inform the jury of the existence of parole law but forbids the jury from applying it in assessing pun-

ishment, is constitutional. *See Shaw v. State,* 729 S.W.2d 134 (Tex.App.—Fort Worth 1987); and *see Patton v. State,* 717 S.W.2d 772, 779 (Tex.App.—Fort Worth 1986, pet. pending). We therefore overrule points of error two through six. The judgment of the trial court is reversed and the case remanded for a new trial.