**William EVANS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 981–87.**

Court of Criminal Appeals of Texas,
En Banc.

July 20, 1988.
Rehearing Denied Sept. 21, 1988.

Allan K. Butcher, Fort Worth, for appellant.

Tim Curry, Dist. Atty. and C. Chris Marshall, David L. Richards, Alan Levy and David Montague, Asst. Dist. Attys., Fort Worth, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

PER CURIAM.

This is an appeal from a conviction for aggravated robbery.

The Court of Appeals overruled points of error challenging the constitutionally of Article 37.07, § 4(a), V.A.C.C.P., but sustained a point of error complaining of a "have your heard" question the prosecutor put to a reputation witness for appellant, and reversed the judgment of conviction. *Evans v. State*, 732 S.W.2d 703 (Tex.App.—Fort Worth 1987).

Thereafter, appellant filed a motion for bail in this Court pursuant to Article 44.04(h), V.A.C.C.P.

We have granted the petition for discretionary review and summarily will vacate the judgment of the Fort Worth Court of Appeals and remand the cause to that court. Tex.R.App.Pro. Rule 202(k).

*Walker v. State*, 610 S.W.2d 481 (Tex.Cr.App.1980), upon which the Fort Worth Court of Appeals primarily relied, does preclude the State from eliciting facts surrounding commission of an offense forming the basis of a conviction that is part of the prior criminal record of an accused. *Id.*, at 483. However, we are of the opinion that such rule does not govern "have you heard" questions posed on cross examination to a reputation witness. In that situation the Court has held that "the State is permitted to ask such witnesses if they have heard of a specific act of misconduct inconsistent with the reputation to which they testified," pointing out that "[p]roof of the 'prior criminal record' of an accused and the proper cross-examination of a reputation witness are not to be confused." *Hines v. State*, 515 S.W.2d 670, at 675, 676 (Tex.Cr.App.1974). See generally *Ward v. State*, 591 S.W.2d 810 (Tex.Cr.App.1978, 1979).*

Accordingly, we do not approve the rationale by which the Fort Worth Court of Appeals sustained the first point of error.

On the other hand, the Court of Appeals overruled points of error two through five attacking constitutionality of the instruction on parole law given in accordance with Article 37.07, § 4(a), supra. Since then this Court has decided the statute is unconstitutional. *Rose v. State*, 752 S.W.2d 529 (Tex.Cr.App.1987) (Opinion on Rehearing).

Therefore, the Court of Appeals should reexamine those points of error in light of *Rose v. State*, supra. Remanding the cause for that purpose makes appellant's motion for bail moot; it is dismissed.

The judgment of the Fort Worth Court of Appeals is set aside and vacated, and the cause is remanded to that court for further proceedings not inconsistent with this opinion.

TEAGUE, Judge, dissenting and concurring.

I respectfully dissent to part of what the majority opinion states, but also concur in

---

* Trial of the instant case occurred in January 1986. Since then rules pertaining to proof of character by reputation have changed some-

what. See Tex.R.Cr.Evid. Rules 404(c) and 405(a).

part, and join that part of the opinion that remands this cause to the Fort Worth Court of Appeals.

The majority opinion, after concluding that the Fort Worth Court of Appeals, see *Evans v. State*, 732 S.W.2d 703 (Tex.App.—2nd 1986), "primarily relied" upon this Court's decision of *Walker v. State*, 610 S.W.2d 481 (Tex.Cr.App.1980), as its authority in sustaining appellant's first point of error, that related to one of the prosecuting attorneys [1] asking a defense "reputation" witness an improper "have you heard" question, and then telling the reader to "See generally *Ward v. State*, 591 S.W.2d 810 (Tex.Cr.App.1978, 1979)," holds: "[W]e do not approve the rationale ["rationale" is defined in most dictionaries to mean "The fundamental reasons for something; a logical basis; an exposition of principles of reasons"] by which the Fort Worth Court of Appeals sustained the [appellant's] first point of error."

I personally am not sure what to make out of what the majority opinion states and holds, as to the issue that concerns the second chair prosecutor asking a defendant's "reputation" witness the "have you heard" question that the court of appeals found was improperly worded. Does what the majority opinion states mean that, notwithstanding the record of this cause, the second chair prosecutor's "have you heard" question was proper? Does it mean that the trial judge, who obviously solicited from the second chair prosecutor a "white horse" case that would have supported the second chair prosecutor's asking the "have you heard" question, but after not receiving such a case from either the second chair prosecutor or the lead prosecutor, erroneously sustained one of appellant's attorney's objections to the second chair prosecutor asking the "have you heard" question? Does it mean that regardless of the reasons the court of appeals gave for its holding, its bottom line holding that the "have you heard" question was improper is disapproved by a majority of this Court? Does it mean that a prosecutor is now free

to "load up" a "have you heard" question with as many details of an extraneous offense, limited only by his innovativeness, creativeness, and imagination, and then ask a defense "reputation" witness that question?

If the court of appeals' opinion is to be condemned for "the rationale" that it used in reaching its result, that the question asked was improper, given the above unanswered questions that I have posed, what should one say about this Court's majority opinion? Perhaps, on remand, the court of appeals will invoke a better "rationale" in holding that the second chair prosecutor's "have you heard" question was improper, and will also advise us how it interprets this Court's majority opinion in this cause.

Although I agree, for reasons that I will give, with the holding of the court of appeals, that given the circumstances of this cause the second chair prosecutor's "have you heard" question was, as worded, improper, I am unable to agree with the court of appeals' implicit holding that the mere asking of the question constituted reversible, and incurable, error. Therefore, I concur and dissent.

The record reflects, but the jury was not told, that prior to trial the State offered to enter into a plea bargain agreement with appellant, with the State agreeing to recommend a sentence of either "five years aggravated" or "seven years unaggravated". Appellant apparently declined the offer because the jury eventually assessed his punishment at life imprisonment.

The record reflects that on May 30, 1984, appellant and another individual went inside of a convenience store in Fort Worth in the early afternoon and robbed two store employees of slightly more than $88. Appellant was arrested by the police within minutes after the offense had been committed. Appellant's "defense" amounted to "misidentification" of him by the State's witnesses as one of the perpetrators of the offense. In less than 30 minutes the jury

---

1. Because this prosecutor stated the following into the record, "I want to make sure I get this part clear. I've been assisting [the other prose-cutor] who is the lead prosecutor," I will henceforth refer to him as "the second chair prosecutor".

found appellant guilty of the primary offense of aggravated robbery with a deadly weapon.

Appellant elected to have the jury assess punishment, and the trial judge thereafter conducted a punishment hearing. A prior felony conviction for the offense of murder with malice aforethought, that was shown to have occurred on July 23, 1973, on a plea of guilty, was alleged in the indictment for enhancement of punishment purposes. The jury was made aware through admissible evidence that appellant pled guilty and received a 20 year sentence in the penitentiary for that offense. The record reflects, but the jury was not told, that appellant was released from the penitentiary in 1983. The date of the enhancement offense was shown to have been April 9, 1973, but the jury was not made aware of this date. Notwithstanding the fact that appellant pled "true" to this allegation, the State still chose to prove it up through pen papers from the Department of Corrections and independent fingerprint testimony. After deliberating for 83 minutes (1 hour and 23 minutes), the jury voted to assess appellant's punishment at life imprisonment. The jury found that the allegations in the indictment that related to the prior felony murder conviction were "true". Therefore, the minimum punishment that the jury could have assessed was 15 years confinement in the penitentiary.

I find that to better understand the court of appeals' holding that the second chair prosecutor's "have you heard" question was improper it is necessary to go into some detail as to what happened in the trial court at the punishment stage of the trial.

The record reflects that at the punishment hearing appellant called L.V. Evans, his cousin, whom I will refer to as "L.V." because he has the same last name as appellant does, to testify, and through L.V.'s testimony it was established that L.V. had lived "close" to appellant "just about all his life"; that appellant was married; that he, L.V., had visited in appellant and his wife's home; and that appellant was employed and supported his family. Appellant also attempted to have L.V. testify that appellant's wife was then in the hospital, and that she had an operation that week, but the prosecutor's objections to these questions were sustained.

On direct examination, L.V. was also asked if he had "knowledge or did [he] know that [appellant] had been convicted of murder here in Tarrant County", and L.V. replied in the affirmative. As previously pointed out, the jury had been made aware that appellant had been convicted of murder in Tarrant County in 1973, and the State introduced no other prior criminal convictions that appellant had sustained in Tarrant County. For reasons not explicated in the record, appellant's counsel asked L.V. if he was "acquainted with [appellant's] reputation for being a peaceful and law-abiding citizen *since* appellant had been convicted of the murder offense in 1973." [2] Neither prosecutor objected to the form of the last question. L.V. testified that he was and that appellant's reputation was good. Almost immediately thereafter, L.V. was passed for cross-examination.

The second chair prosecutor cross-examined L.V. He asked L.V.: *"Have you heard that on the 9th day of April, 1973, that the Defendant was* —[Many dictionaries define this symbol as "a pause and sudden burst"] *that the Defendant murdered a child under the age of fourteen?"* (My emphasis.) One of appellant's attorneys objected, and after a discussion at the bench between the trial judge and the attorneys outside of the jury's presence, at which conference I believe it is implicit that the trial judge was obviously seeking to ascertain whether the second chair prosecutor had any valid case law authority that would support his asking the question, and apparently upon learning that he did not

2. L.V. testified as follows:

Q: Do you have knowledge or did you know that he had been convicted of murder here in Tarrant County?
A: Yes.

Q: Since that conviction, are you acquainted with his reputation for being a peaceful and law-abiding citizen?
A: Yes, sir.
Q: Is it good or bad?
A: It's good.

have any such authority the trial judge sustained the objection and instructed the jury to disregard the question and not to consider it "for no purpose." Appellant's attorney's motion for mistrial was denied. The second chair prosecutor then stated: "I have no further questions." Both sides then rested and closed. At no time after he asked the above question did the second chair prosecutor attempt to get into evidence the details of the murder with malice aforethought conviction.

Apparently to establish that the second chair prosecutor asked the question in "bad faith", appellant's attorney who had objected to the above "have you heard" question thereafter questioned that prosecutor about why he had asked the question. The lead prosecutor was not questioned. The second chair prosecutor told counsel, in my paraphrasing of his answers, that he asked the question because he honestly believed that it would test the witness's knowledge of the appellant's reputation for being a peaceable and law-abiding citizen in the community in which he resided, and that, although he cited no case law for authority, he believed that "the law" permitted him to ask the question, notwithstanding that the trial judge earlier ruled that he could not ask the question as worded. It was established at this hearing that in asking the "have you heard" question, the second chair prosecutor tracked in all things the pertinent part of the indictment that was the basis of the murder conviction that appellant had sustained in 1973. The indictment, however, was never admitted into evidence "for the record", nor is it in the record of appeal.

On direct appeal, in his first point of error, appellant's new appellate attorney asserted: "The trial court erred in refusing to grant the appellant's motion for mistrial after the prosecutor had improperly injected details of the appellant's prior murder conviction." Counsel, in his argument under his point of error, apparently after not finding a "white horse case", attempted to make an analogy why the question was improper by using this Court's interpretation of Art. 37.07, V.A.C.C.P., as to the meaning that must be given to the phrase "prior criminal record." Counsel argued that although Art. 37.07, supra, permitted the State to have admitted prior criminal convictions of the defendant, other than establishing the historical fact of the prior conviction, it was impermissible to offer into evidence the details of the offense that led to the conviction. Counsel also argued that the trial judge's instruction was insufficient to cure the alleged error, and further argued that the second chair prosecutor's asking the "have you heard" question was "calculated to inflame the minds of the jurors", and lastly argued that the second chair prosecutor's error in asking the question was not harmless to appellant.

In response, the State maintained that the "have you heard" question was not improper and that Art. 37.07, supra, was inapplicable to resolving the issue.

The court of appeals implicitly agreed with appellant's counsel's Art. 37.07, supra, analogy argument and held, inter alia, that the "have you heard" question asked by the second chair prosecutor was improper and should not have been asked, and, for reasons it gave, was so egregious that it called for appellant's conviction to be reversed.

Obviously not taking into consideration all of the above, a majority of this Court, in rejecting "the rationale by which the Fort Worth Court of Appeals sustained the first point of error", appears to me to be saying: "Look, we have found a white horse case that controls the issue. See *Ward v. State*, 591 S.W.2d 810 (Tex.Cr.App.1978, 1979)." [3]

---

3. The majority opinion also cites an excerpt from *Hines v. State*, 515 S.W.2d 670, 675–676 (Tex.Cr.App.1974), namely: "Proof of the 'prior criminal record' of an accused [under Art. 37.-07, V.A.C.C.P.] and the proper cross-examination of reputation witnesses are not to be confused. Article 37.07, supra, is not a limitation upon such cross-examination." I am unaware of anyone, including the members of the Fort Worth Court of Appeals, who disagrees with this statement. As previously mentioned, the court of appeals appears to have implicitly agreed with appellant's analogy argument; it did not, however, get "confused", as the majority opinion implies.

*Ward,* supra, however, is no "white horse case"; it merely represents the successful efforts by at least six members of a relatively new "nine man" Court of Criminal Appeals to expressly overrule this Court's "five man" ignominious decision of *Childs v. State,* 491 S.W.2d 907 (Tex.Cr. App.1973), which came about when another innovative, creative, and imaginative prosecuting attorney, now dead, convinced the then five man Court of Criminal Appeals that it should adopt one of the most bizarre and wild theories any prosecutor could ever come up with. In my view, *Childs,* supra, probably belongs in this Court's top ten worst opinions. After this Court's membership was increased to nine members in 1978, at least six of those nine members, after finding that the unanimous, but ignominious decision of *Childs,* supra, was "unsupported by precedent, and by reason," voted in 1979 to expressly overrule it in *Ward,* supra. Almost needless to say, a breath of fresh air blew over the entire Great State of Texas that day.

*Childs,* supra, and its progeny, stand for the proposition that a defendant's witness, who only gives his opinion as to one or more specific *character* traits that he is personally aware that the defendant has, can be converted by the prosecutor into *a general reputation* witness, by asking what many would consider a "trick" question, and if the witness answers the "trick" question in the affirmative the prosecutor can then pepper the witness with "have you heard" questions.

In *Ward,* supra, this Court expressly held that there is no reasonable basis for permitting a prosecuting attorney to convert such a "character" witness into a "reputation" witness, by asking what many would consider a "trick" question, and then, after receiving an affirmative answer, pepper the witness with "have you heard" questions.

In this instance, however, the second chair prosecutor did not attempt to run afoul of what this Court had stated and held in *Ward,* supra, and, furthermore, he made no effort to revive this Court's five judge ignominious *Childs,* supra, opinion.

It is obvious to me that the second chair prosecutor was merely trying to find out how far the trial judge would let him go in "loading up" his "have you heard" question with details of a prior felony offense for which the appellant had been convicted in 1973. In this instance, as things turned out, the second chair prosecutor selected the wrong trial judge to experiment on as this careful trial judge, in protecting the right of appellant to receive a fair trial, ruled against the second chair prosecutor.

The real question in this instance is just how broad a prosecutor might phrase a "have you heard" question when cross-examining a defendant's "reputation" witness.

It is obvious to me, if no one else, that after having read many, if not all, of this Court's often times not so clear opinions dealing with a prosecutor's impeachment of a defendant's "reputation" witness, the second chair prosecutor, after not finding any case that held that *he couldn't ask the "have you heard" question,* as worded, that he wanted L.V. to answer, which wording came from the indictment which was the basis of appellant's 1973 murder conviction, concluded that he could frame his question according to the exact, but pertinent, allegations of the indictment that was the basis of appellant's conviction for murder with malice in 1973, and that is exactly what he did. The trial judge, however, obviously not recalling a case where this Court had approved a prosecutor asking the same type of identically worded question asked by the second chair prosecutor in this cause, disagreed and sustained defense counsel's objection and instructed the jury to disregard the question. The second chair prosecutor, obviously not being able to exhibit to the trial judge a "white horse" case that held that the question, as worded, could be asked, did not pursue the matter, probably thinking that a better day would come for him before another and different trial judge, or perhaps before the Fort Worth Court of Appeals, or even before this Court. Given what this Court's scrawny and raw-boned opinion states, did he succeed before this Court today? After carefully reading the majority opinion, I am

unable to unequivocally answer the question.

Of course, given the fact that the second chair prosecutor was treading in unclear waters, he should have first attempted to get a ruling from the trial judge outside the jury's presence before asking L.V. the "have you heard" question in the jury's presence. Nevertheless, given the fact that the law is terribly unclear on just how precise a "have you heard" question that a prosecuting attorney desires to ask a defendant's "reputation" witness must be, and just how much excessive extraneous offense baggage that question might contain, I believe the court of appeals was a little too quick on the trigger in chastising the second chair prosecutor's efforts to have L.V. answer the "have you heard" question that he asked.

I have attempted in several opinions to point out what constitutes "general reputation testimony" and "personal opinion character testimony", and their distinctions, as well as what constitutes the necessary predicate for a witness who wishes to testify that a defendant has a "bad" reputation versus a witness who wishes to testify that a defendant has a "good" reputation. See *Jackson v. State*, 628 S.W.2d 446, 450 (Tex. Cr.App.1982), and *Moncrief v. State*, 707 S.W.2d 630 (Tex.Cr.App.1986) (Concurring opinion).

Over 30 years ago, Judge Beauchamp of this Court, when it consisted of only three members, in *Wharton v. State*, 157 Tex.Cr. R. 326, 248 S.W.2d 739 (1952), eloquently pointed out that most attorneys, and perhaps implicitly some trial and appellate judges, do not know the difference between examining a "personal opinion character" witness and a "general reputation" witness. "Sometimes there seems to be an utter lack of understanding of the difference between 'character' and 'reputation' which leads to a misunderstanding as to the things that are admissible." (740). I find that Judge Beauchamp's words are just as true in 1988 as when they were uttered in 1952.

Today this Court is confronted with and given the opportunity to resolve the issue, how much or how little may the cross-examiner of a defendant's "reputation" witness put into his "have you heard" question. A majority of this Court, sad to say, declines to take the opportunity and answer that question, which so badly needs answering for the sake of prosecutors, defense attorneys, and trial judges of this State.

Given the fact that the "have you heard" question that was asked in *Moffett v. State*, 555 S.W.2d 437 (Tex.Cr.App.1977), is virtually identical to the one asked by the second chair prosecutor in this cause, and was approved on rehearing, why doesn't the majority opinion, rather than cite *Ward*, supra, which is not even on point, cite *Moffett*, supra, which is another ignominious decision by this Court? If that occurred, then, of course, this Court would not only make the second chair prosecutor's day a fantastic one, it would easily inform many of us that the present majority truly does not understand the significance of requiring a prosecuting attorney to ask precise "have you heard" questions that do not contain so many details from an extraneous offense that they run afoul of this Court's general rule that extraneous offense testimony is inadmissible evidence.

On original submission, Judge Roberts, in writing a well reasoned and authoritative opinion for the then five man Court, concluded from this Court's past case law that the following question asked of a defense "reputation" witness was improper: "Q: Have you heard that on September 18th of 1973, that he [the defendant] robbed a woman by the name of Francis Tindall, at the Globe Cleaners at 2430 North Haskell Avenue with a firearm?"

On the State's motion for rehearing, however, Judge Roberts' brilliantly reasoned and authoritative opinion bit the dust. The majority opinion on rehearing, however, has no reasoning in it, and, like the majority opinion in this cause might state, its rationale is sorely lacking.

As to the issue before us, whether the second chair prosecutor's "have you heard" question, as worded, was proper, given the fact that I cannot find where since this

Court's membership was increased to 9 members, any of this Court's opinions, either panel or en banc, that cite *Moffett,* supra, are on point to the issue in this cause, and given the additional fact that *Moffett,* supra, is, like *Childs,* supra, "unsupported by valid precedent, and by reason", this case would be a good opportunity for this Court's nine members to revisit *Moffett,* supra, and expressly overrule it. The majority, sad to say, declines to take that worthwhile step.

Judge Roberts wrote the following on original submission in *Moffett,* supra: "In this case the prosecutor's question, through its structure *and excessive detail,* clearly implied that the act had actually occurred." (My emphasis.) And based upon this Court's past decisions he concluded that the prosecutor erred in asking the above question and that under this Court's past decisions such was reversible error.[4]

It is obvious to me that Judge Roberts based his holding that the question was improper on this Court's long standing rule that "While the witness might have been questioned concerning *rumors* he had heard as to specific acts of misconduct on the part of appellant, contrary to the reputation assigned by the witness, he could not be questioned concerning his knowledge of such matters." *McNaulty v. State,* 138 Tex.Cr.R. 317, 135 S.W.2d 987 (1939). (My emphasis). Thus, it was long the law of this State that in asking a defense reputation witness a "have you heard" question the question had to be extremely precise and could not implicate facts that reflected or indicated that the defendant had committed any wrongful acts, because this would permit the jury to find him guilty or punish him for being a criminal generally.

I pause to point out that approximately five years before he wrote the original opinion in *Moffett,* supra, Judge Roberts wrote a unanimous opinion for another five man Court in *Brown v. State,* 477

S.W.2d 617 (Tex.Cr.App.1972). There, Judge Roberts pointed out that the "rationale" behind the rule that permits the cross-examiner to ask "have you heard" questions is that "reputation" testimony is based totally upon hearsay. "The reputation witness states his opinion based on that which he has heard from others concerning the defendant. In order to test his opinion, the prosecution is allowed to determine whether the witness has *heard* (not whether he *knows*) of acts or reports which would be inconsistent with a good reputation. The theory is that if the witness is truly familiar with the reputation of the defendant [as he asserted when he testified that the defendant had, for example, a good reputation for being a peaceable and law-abiding citizen], he will have also heard of adverse reports which are circulating in the community. This is consistent with the nature of reputation evidence, that is, an opinion based on hearsay. Reputation does not concern that which a person is, but rather, that which he is thought to be. Thus, a question regarding an act of misconduct which, by its very nature, is likely to be a part of the person's reputation in the community, is appropriate as a means of testing the weight and credibility of the witness' opinion. (Citations omitted.) ... It should be kept in mind that the purpose of the cross-examination is not to discredit the person on whose behalf the witness is testifying, but rather, the purpose is to affect the weight of the witness' testimony. (Citations omitted.) Thus, since reputation is based on hearsay, an examination as to whether the witness has heard hearsay inconsistent with his opinion is proper." (620).

Judge Roberts did not dream up the above. In *Wiley v. State,* 153 Tex.Cr.R. 370, 220 S.W.2d 172 (1949), this Court pointed out the following almost 40 years ago:

plies the commission of another offense, its harmfulness cannot be cured by the answer or failure to answer, or by any instruction which the court may give, and reversible error is reflected thereby."

---

4. In *Carey v. State,* 537 S.W.2d 757, 759 (Tex.Cr. App.1976), this Court expressly overruled the long standing rule that had been announced in *Parasco v. State,* 168 Tex.Cr.R. 89, 323 S.W.2d 257 (1959), that "Whenever a question is asked which amounts to an assertion of fact and im-

Witnesses attesting to the good reputation of an accused may, as affecting the weight, credibility, and sincerity of their testimony, be asked upon cross-examination as to *whether they had heard of acts of the accused inconsistent with that reputation.* (Citations omitted.) (My emphasis.) Such, however, is as far as the State is permitted to go in such matters, for it is expressly prohibited from conducting the cross-examination or framing the interrogatories so as to show specific acts of misconduct on the part of the accused or that he has, in fact, been guilty of such acts. (Citations omitted.)

The distinction between the two rules just stated lies in the fact that the inquiry of the character witnesses as to whether they had heard of acts of misconduct by appellant is admissible, upon the theory of impeachment of the witnesses' testimony; on the other hand, the State is expressly precluded from proving, by hearsay, that the accused is in fact guilty of misconduct. (174).

On original submission, Judge Davidson of this Court stated in *Villarriel v. State*, 163 Tex.Cr.R. 654, 295 S.W.2d 222 (1956), that in this State the general rule that an accused must not be tried for being a criminal generally prevails, and that unless there is an exception to that rule, any effort by the prosecution to try the defendant or punish him for being a criminal generally will usually result in the conviction being reversed.

Thus, although it is permissible for the prosecuting attorney to inquire of a "reputation" witness whether he or she has heard of acts of the defendant which are inconsistent with the character trait about which the witness has testified as a reputation witness, the prosecutor may not question the witness about specific acts of misconduct by the accused. Also see *Kennedy v. State*, 150 Tex.Cr.R. 215, 200 S.W.2d 400, 403 (1947).

From the above I believe that one can conclude as I have that when a defendant's witness testifies *unqualifiedly* to the defendant's reputation for being a peaceable and law-abiding citizen in the community in which he lives or resides, the prosecuting attorney is free to cross-examine him about whether he has also heard that the defendant has committed acts which are inconsistent with those character traits. To avoid running afoul of the general rule that the defendant must not be tried for being a criminal generally, in asking the witness "have you heard" questions, the prosecuting attorney's questions must not only be very precise, they also must not imply that the defendant has in fact committed any criminal wrongs. A successful prosecutor closely resembles a high wire specialist.

In deciding whether a "have you heard" question is or is not proper, the answer does not lie in whether the question can be asked; it is how many details of an extraneous offense the question can contain. In light of the purpose of permitting the prosecutor to ask "have you heard" questions, it appears to me that the prosecutor should not be permitted to frame his questions with any greater particularity than is reasonably necessary to accomplish his purpose of impeaching the witness about the traits the witness has testified about, i.e., the question should only contain as much information as is necessary to impeach the witness, to show that the witness does not actually in fact know the hearsay reputation that the defendant bears in the community for that particular character trait. Otherwise, the jury might very well believe it can either find the defendant guilty or punish him for being a criminal generally.[5]

I find that in resolving the issue whether the "have you heard" question, as worded, that the second chair prosecutor asked appellant's cousin, L.V., was proper or improper, the court of appeals was faced with what appears to me to be a strange set of circumstances that existed *before* L.V. was ever asked the "have you heard" question.

5. Of course, if the witness is permitted to answer a "have you heard" question, the trial judge, if requested, must give the jury a limiting instruction as to why this testimony is being admitted.

Without objection from either the second chair prosecuting attorney or the lead prosecuting attorney, L.V. was permitted to testify in a *qualified* capacity, i.e., appellant's attorney was permitted, because neither prosecutor objected, to restrict his reputation question to the time *since* appellant had been convicted of murder with malice aforethought on July 22, 1973.[6] Given this fact, the second chair prosecuting attorney's question, which went beyond that date, was clearly improper because L.V. did not testify in an *unqualified* capacity.

Next, L.V. was asked on direct examination by one of appellant's attorneys whether he was aware of the fact that appellant had been previously convicted of murder, which historical fact was already in evidence before the jury *before L.V. testified,* and L.V. testified that he was familiar with this historical fact. Whether the community in which appellant lived and resided was aware of this fact is not reflected or indicated in this record.[7] The second chair prosecuting attorney later admitted that the testimony and evidence that related to the prior 1973 murder conviction that appellant had sustained had "the same cause number" as the murder conviction that L.V. was asked about by appellant's attorney. Thus, it is clear that when reference was made to the murder conviction that appellant had sustained in Tarrant County, that conviction occurred in 1973.

In this instance, the State has never argued that the "have you heard" question that the second chair prosecuting attorney asked L.V. was admissible to impeach L.V. because he had testified as a "personal opinion character" witness for appellant.

The second chair prosecuting attorney was never prohibited by the trial judge from establishing or attempting to establish that L.V. was actually testifying in the capacity of a "personal opinion character" witness, and not as a "reputation" witness. Thus, this is not the situation where a "personal opinion character" witness testifies that another individual has a particular character trait that he personally knows is good.

In *Brown,* supra, Judge Roberts pointed out, as applied to this case, that L.V., as a "reputation" witness, was reporting to the trier of fact, as a "voice from the community", that appellant had a "good" reputation in the community for being a peaceable and law-abiding citizen. Of course, if other "voices" had been available to testify that appellant's reputation in the general community in which he lived was bad for those character traits, then the second chair prosecuting attorney was free to call those persons to testify, but he didn't call any such witnesses to testify against appellant.

Had the second chair prosecuting attorney believed that L.V. was not qualified to speak as a "reputation" witness, he could have requested the trial judge to hold a hearing on the issue, or at least could have requested that he be permitted to voir dire L.V. in order to establish that L.V. was not qualified to speak as a "reputation" witness, but he did neither.

The second chair prosecuting attorney was entitled, provided he first laid the proper predicate, to impeach L.V.'s testimony that appellant had a "good" reputation in the community for being a peaceable and law-abiding citizen with any evidence that would have shown that L.V. was not really qualified to report to the trier of fact what appellant's reputation for those character traits in the community was, and was also entitled to impeach him with any evidence that might have affected his "credibility" as a witness.

Personal type impeachment evidence, had it been available to the second chair prosecuting attorney, could have been used to impeach L.V.'s testimony. Some examples are as follows: the fact that L.V. had

---

6. The exact question that L.V. was asked by one of appellant's attorneys was the following:

    Q: Since that conviction, are you acquainted with his reputation for being a peaceful and law-abiding citizen?

7. The record does not reflect that anyone raised the question, whether appellant's conviction for murder with malice aforethought in 1973 was ever a topic of hearsay conversation in the community in which appellant lived in Tarrant County.

lived in appellant's "general community" for only a very short period of time; that L.V. really did not listen to gossip and rumor that circulated in the general community about its members; that because he had restricted his testimony to "since" when appellant had sustained his murder conviction in 1973 he really was not familiar with appellant's "reputation" in the general community; that L.V. was personally biased for appellant, or against the State; that L.V. was testifying only because appellant was his cousin; that L.V. was not a member of any group in the community with whom appellant associated; that L.V. did not mingle with any friend or friends that appellant might have had, etc. But the second chair prosecuting attorney did not choose to ask L.V. any of these questions, apparently because there was no basis on which he could have asked any of these questions.

When an individual testifies as a "reputation" witness, he is merely reporting to the trier of fact what he himself, as a member of the community, has heard others in the community say is the community's opinion of what reputation a member of that community has for a particular character trait, or is reporting to the trier of fact what he has been told by another or other members of the community what they have heard is the community's opinion of an individual's reputation for a particular character trait or traits.

The second chair prosecuting attorney was entitled to ask L.V., but did not ask him, the predicate question, whether L.V. was aware of or had heard of any acts or reports in the general community, without at that time specifying the acts or reports, which might have been inconsistent with his testimony that appellant had a "good reputation in the general community for being a peaceable and law-abiding citizen". The second chair prosecuting attorney, without laying the necessary predicate, just hauled off and asked L.V. the following question: "Have you heard that on the 9th of April, 1973, that the Defendant [appellant]—that the Defendant murdered a child under the age of fourteen?" If L.V. had been asked the predicate question and had

he denied having heard of any inconsistent acts, then the prosecuting attorney could not further question him on the subject. However, the prosecutor could have impeached L.V. if he had had available another witness who had heard that appellant had committed acts inconsistent with the above character traits.

If L.V. had admitted hearing of any inconsistent act, and been asked what the inconsistent act consisted of, the prosecuting attorney would have then been entitled to question L.V. in such a fashion so as to leave the inference with the trier of fact that anyone who was aware of the facts of the inconsistent act would never testify that that individual had a good reputation for being a peaceable and law-abiding citizen in the community in which he lived. Questions along this line would certainly cause one to suspect the credibility of the witness. However, the defense would be entitled to rehabilitate the witness by showing through rumor and gossip that had circulated in the community that any bad effects of the inconsistent acts had been overcome in the eyes of the community by good community deeds that the defendant had performed or accomplished since he had committed the inconsistent acts. This kind of questioning should be distinguished from asking "have you heard" type questions.

A "have you heard" question is directed to establishing the limited base of hearsay knowledge that the witness drew from when he formed the hearsay opinion as to a particular character trait that the individual about whom he is testifying has in the general community, i.e., if the witness admits knowing of inconsistent acts, the prosecuting attorney can then ask him what those inconsistent acts were, or could ask him "have you heard" questions about the inconsistent acts in order to ascertain whether the inconsistent acts are one and the same as the ones that the prosecutor is aware of.

As long as the proper predicate is laid, the type of cross-examination as to the inconsistent act is left to the cross-examiner. In that instance, it just depends on what meth-

od the cross-examiner believes he can use to get the most mileage out of his cross-examination of the "reputation" witness.

I acknowledge that what I have stated might appear to some to be a radical departure from what this Court might appear to have stated or held in the past in deciding whether a "have you heard" question was or was not proper, and it may very well be that only Judge Roberts and I understand the necessity of laying the proper predicate. However, I am confident that if one will take the time to study what I have stated, he will easily see that compared to the law that presently exists in this State the above is far superior.

It is perhaps true that the court of appeals, in reaching its conclusion that the "have you heard" question that the second chair prosecutor asked L.V. was improper, probably should not have used the Art. 37.07, supra, analogy that it did, if in fact that is what it did. Had it made an analogy to former Art. 38.29, V.A.C.C.P., this, too, would have probably been improper. This is because these statutes, notwithstanding that they might have many similarities to the general rule that details of an extraneous offense are inadmissible, are special type statutes that do not concern impeaching a "have you heard" witness.

But, given the fact that the only authority that it could have cited was an ignominious decision of this Court, *Moffett*, supra, can this Court's members really fault the court of appeals for the approach it took? I, for one, do not believe so.

Given what I have stated, I believe it should be easy to see why I agree with the bottom line holding that the court of appeals made, that the second chair prosecutor's "have you heard" question, as worded, was improper. Thus, I dissent to this Court's majority opinion not putting its good housekeeping seal of approval on this holding.

However, I believe that it must be determined whether the mere asking L.V. the "have you heard" question constituted reversible error. In this instance, L.V. never answered the question because the trial judge sustained one of appellant's objec-

tions, and furthermore the trial judge instructed the jury to disregard the question, and not consider it for any purpose.

My research reveals that it is the rare case where this Court will reverse a conviction solely because an improper question may have been propounded by the prosecuting attorney, and the trial judge instructed the jury to disregard the question. In fact, my research to date reflects that the last case this Court reversed solely for this reason was *Mounts v. State*, 148 Tex. Cr.R. 177, 185 S.W.2d 731 (1945), and that occurred over 40 years ago. Also see *Carey*, supra.

Although I have found that given the circumstances of this case the second prosecutor's "have you heard" question, as worded, was improper, and should not have been asked, I cannot say that the jury did not heed the trial judge's instruction to disregard the question, or that it considered the question asked. Furthermore, the improper question was asked at the punishment stage of the trial. When the question was asked, the jury then had before it through proper evidence that in 1973 appellant had been convicted of murder with malice aforethought and received a 20 year sentence. This conviction was alleged for enhancement of punishment purposes, which elevated the minimum punishment to 15 years' confinement in the Department of Corrections. Appellant himself pled true to this allegation of the indictment. The jury took almost 1½ hours before it returned its verdict assessing appellant's punishment at life imprisonment. Given the facts of this case, the properly admitted evidence that went to the prior murder conviction, and especially the fact that the jury deliberated almost one hour and thirty minutes before returning its verdict of life imprisonment, I am confident that the jury followed the trial judge's instructions, and conclude that the second chair prosecutor's error in asking L.V. the "have you heard" question, as worded, did not contribute to the jury's assessing appellant's punishment at life imprisonment. Thus, for the foregoing reasons, I am compelled to find that

the court of appeals erred in ordering appellant's conviction reversed for this reason.

The majority opinion orders this cause remanded to the court of appeals to consider the error that occurred when the trial judge gave the statutory "parole law" instruction to the jury at the punishment stage of appellant's trial. See Art. 37.07, § 4(a), V.A.C.C.P., and the many opinions filed in this Court's cause of *Rose v. State*, 752 S.W.2d 529 (Tex.Cr.App.1987). To this action of the Court, I concur.

Therefore, I dissent and concur.