Preston DUNCANTELL, Appellant,

v.

The STATE of Texas, Appellee.

No. 09–93–250 CR.

Court of Appeals of Texas,
Beaumont.

June 8, 1994.

Douglas M. Barlow, Beaumont, for appellant.

Tom Maness, Dist. Atty., Rodney D. Conerly, Asst. Dist. Atty., Beaumont, for state.

Before WALKER, C.J., and BROOKSHIRE and BURGESS, JJ.

## OPINION

WALKER, Chief Justice.

Appellant was indicted and tried for the felony offense of Attempted Murder. A jury returned a verdict of guilty on the lesser included felony offense of Aggravated Assault. The jury also found the allegation in an enhancement paragraph true and assessed punishment at twenty (20) years' confinement in the Institutional Division of the Texas Department of Criminal Justice. Appellant raises two points of error for our consideration, *viz:*

> Point of Error One: The trial court erred in admitting evidence of extraneous offenses, to wit: two other shootings on the occasion in question.

> Point of Error Two: Reversible error occurred when the prosecutor was allowed to misstate the law over the objection of appellant.

Appellant's initial point of error has its genesis in the following exchange taken from the direct examination of the victim, Eugene James Morton[1]:

> Q. (prosecutor) Okay. And then what happened after you returned your shots?

> A. (Morton) Well, he (appellant) broke and ran down the alley.

Q. Okay. Then what happened after that?

A. Well, somebody called the police and the ambulance.

Q. Okay. Okay.

A. There was two people hit inside.

Q. Two people were shot—

(Defense counsel): Objection, Your Honor. That's an extraneous offense and not relevant to this case.

. THE COURT: Overruled.

(Continued by the prosecutor)

Q. You say there were two people shot inside?

A. Uh-huh.

Q. You say those people inside?

A. Right.

Q. And do you know the two people who were inside the bar that were shot?

A. I know one of them by his last name, and the girl who got hit I don't know them (sic) by name.

(Defense counsel): Once again, Your Honor, I object. This has no bearing or relevancy on the attempted murder on the part of Mr. Morton.

THE COURT: Overruled.

(Continued by the prosecution)

Q. The one you say you know his last name, who is that?

A. Neveaux.

Q. Where was Mr. Neveaux seated at when all this took place? Where was he when all this took place?

A. Well, he was in the front of my building. Okay. The door is here (Indicates). I have a round table sitting right here (Indicates).

Q. Inside of the bar?

A. Right, inside of the building. Right, inside the bar.

The record further reflects that similar testimony was permitted by the trial court during direct examination of the investigating police officer, again over the objections of appellant

---

1. We note that the indictment and all written instructions to the jury refer to the victim as "Eugene Martin." The statement of facts reflects that the witness identified himself as "Eugene James Morton," and responded to questions directed to him as "Mr. Morton." Neither party makes any mention of this discrepancy either at trial or on appeal.

based on relevancy and violations of "Rule of Evidence 401 and 403."

A trial court's ruling on the relevancy of evidence will not be disturbed as long as it is within the zone of reasonable disagreement. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Crim.App.1991) (opinion on rehearing). Tex.R.Crim.Evid. 401 defines "relevant evidence" as evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. In the instant case, evidence of the fact that two patrons were struck with bullets could arguably make it more probable that the shots fired by appellant were at a trajectory showing an intent to kill or seriously injure the victim. While we are not absolutely convinced of the relevancy of the injured patrons' evidence, especially in light of the existence of the photographs indicating the location of the bullet holes in the building in front of which the victim was standing when appellant opened fire, we will not "superimpose [our] own judgment as to relevance over that of the trial court." *Id.* We hold that it was within the zone of reasonable disagreement for the trial court to find that the injured patrons evidence was relevant.

Finding relevance, however, does not end our examination of the issues raised in this point of error. Appellant also objected under Tex.R.Crim.Evid. 403, which provides that, although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence. We note that while no specific request was made by appellant, once Rule 403 is invoked, the trial judge has no discretion as to whether or not to engage in the balancing process. *Long v. State*, 823 S.W.2d 259, 271 (Tex.Crim.App.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 3042, 120 L.Ed.2d 910 (1992). In weighing the probativeness of the evidence against the danger of unfair prejudice, *Montgomery* provides a set of relevant criteria for consideration by a reviewing court, to-wit: 1) that the ultimate issue was

not seriously contested by the opponent; 2) that the State had other convincing evidence to establish the ultimate issue to which the extraneous misconduct was relevant; 3) that the probative value of the misconduct evidence was not, either alone or in combination with other evidence, particularly compelling; and 4) that the misconduct was of such a nature that a jury instruction to disregard it for any but its proffered purpose would not likely have been efficacious. *Montgomery*, 810 S.W.2d at 392–393.

In applying the injured patrons evidence to the *Montgomery* criteria we observe that the ultimate issue of appellant's intent to kill the victim was very hotly contested. Indeed, appellant's entire defense was one of self-defense in that appellant testified that he had observed the victim make a gesture appellant took as the victim going for a weapon. Appellant contended that he pulled his handgun and began shooting only to scare the victim into not using whatever weapon the victim may have had. Nevertheless, application of the remaining criteria to the facts of the instant case indicates the trial court abused its discretion in admitting the evidence.

The record reflects other convincing evidence in the form of State's Exhibits 1 through 4. These exhibits were photographs taken of the entrance area of Morton's bar both from inside and outside the building. In combination with the testimony and with physical items appearing in the photographs, the bullet holes exhibited are at a height consistent with the torso area of an average size adult in a standing position. The fact that two patrons were injured by the shots adds little if any probativeness to the issue of whether or not appellant actually intended to kill Morton when he (appellant) started shooting.

Neither can we say that whatever probative value the injured patrons evidence had was particularly compelling either alone or in combination with other evidence in light of the alleged offense. In pertinent part, the indictment read that appellant, with the specific intent to commit murder, "did then and there intentionally and knowingly attempt to cause the death of an individual, namely:

EUGENE MARTIN (sic) ... by shooting a deadly weapon, to-wit: a firearm, *at and in the direction of Complainant,* ..." (emphasis added). Morton's testimony coupled with the photographs supplies sufficiently compelling evidence as proof of the allegations. The fact that two patrons inside the bar were struck by bullets passing through the wall does not enhance or in any way add to the victim's description of the events or the photographic evidence.

Finally, *Montgomery* 's fourth criterium is difficult to apply to the instant case because the State was not requested to explain it's proffer of the injured patrons evidence. The trial court's written jury instructions contain the following:

> **EXTRANEOUS OFFENSES:** Evidence may have been introduced in this case regarding the defendant's having committed other crimes, wrongs or acts. You are instructed that you can not consider any such evidence to prove the character of the defendant or that he acted in conformity therewith.
>
> You can consider any such evidence for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.

We note the fact that the instruction is in very general terms and only cautions the jury that extraneous evidence "may have been introduced[.]" While it is a very close call, we cannot say with any measure of confidence that an instruction to disregard the injured patrons evidence would have been effective. We therefore conclude our *Montgomery* analysis by holding that the probative value of the injured patrons evidence was substantially outweighed by its unfair prejudice to appellant. In failing to exclude it, the trial court abused its discretion.

■ Finding trial court error, we must now conduct an analysis of the error under the auspices of TEX.R.APP.P. 81(b)(2). Rule 81(b)(2) requires that the appellate court focus upon the error and determine whether it contributed to the conviction or punishment. *Lockhart v. State,* 847 S.W.2d 568, 573 (Tex. Crim.App.1992), *cert. denied,* —— U.S. ——,

114 S.Ct. 146, 126 L.Ed.2d 108 (1993); *Harris v. State,* 790 S.W.2d 568, 585 (Tex.Crim. App.1989). Nevertheless, the impact of the error cannot be properly evaluated without examining its interaction with the other evidence. *Lockhart,* 847 S.W.2d at 573. The question then is "whether a rational trier of fact might have reached a different result if the error and its effects had not resulted." *Harris,* 790 S.W.2d at 588. The record in the instant case reflects no mention was made of the two injured patrons other than on the two occasions referred to earlier in this opinion. The tainted testimony encompassed no more than six pages of the statement of facts out of a total of 133 pages of the guilt/innocence phase, and 24 pages of the punishment phase. Furthermore, as mentioned before, the sole issue for the jury was whether appellant was reacting in self-defense to Morton's allegedly threatening gesture, or whether appellant began shooting at Morton with the intent to kill him. From their verdict, the jury obviously had a reasonable doubt as to the attempted murder allegation as they returned a guilty verdict on the lesser included charge of aggravated assault. In light of all of the untainted evidence and the jury's verdict, we are persuaded beyond a reasonable doubt that the error in admitting the evidence of the two injured patrons did not contribute to appellant's conviction.

■ As to appellant's punishment, the jury was made aware during the punishment phase hearing that appellant had a prior felony conviction for "Murder with Malice." Although appellant pleaded untrue to the enhancement allegation, the jury found the allegation true, and assessed the maximum period of incarceration permitted under the trial court's instructions. In light of the jury's awareness of appellant's prior murder conviction, we again find beyond a reasonable doubt that the erroneous admission of the tainted evidence in question did not contribute to appellant's punishment. Point of error one is overruled.

■ Appellant's second point of error complains of improper argument by the State. Appellant's brief references us to the

following portion of the State's final argument during the guilt/innocence phase of the trial:

(Prosecutor) In the definition it also says—it talks about a situation where he would have retreated. There's a car parked right behind him he could have gotten in and driven away. Is it self-defense that instead of getting in that car and driving away like the law requires that what he does is go to the back door?

(Defense counsel): Your Honor, I object. The law does not require you retreat. It just—That's a misstatement of the law.

THE COURT: Overruled, sir. I've told the jury what the law is.

■ As a prerequisite to the use of deadly force, TEX.PENAL CODE ANN. § 9.32 (Vernon Supp.1994) specifically requires, *inter alia,* that "a reasonable person in the actor's situation would not have retreated[.]" Clearly the prosecutor in the instant case did not misstate the law as the law requires that before deadly force may be used in self-defense the actor is required to retreat if a reasonable person in the actor's situation would have retreated. *Valentine v. State,* 587 S.W.2d 399, 402 (Tex.Crim.App.1979). The prosecutor was merely applying the correct law to the facts of the case as appellant concedes is permissible under *Alejandro v. State,* 493 S.W.2d 230 (Tex.Crim.App.1973). With regard to two other objections to the State's argument also referenced in appellant's brief, we note that the prosecutor was making a plea for law enforcement in turning the table on appellant's defense by arguing self-defense on the victim's part. The trial court sustained both objections by appellant's counsel and instructed the jury to disregard the prosecutor's arguments. Although we feel that the State was engaging in a metaphorical plea for law enforcement permissible under *Alejandro,* we also find no offensive or flagrant error in the State's argument that could not have been cured by the instructions to disregard. *See Cooks v. State,* 844 S.W.2d 697, 728 (Tex.Crim.App.1992), *cert. denied,* — U.S. —, 113 S.Ct. 3048, 125 L.Ed.2d 732 (1993). Point of error two is

overruled; the judgment and the sentence of the trial court are affirmed.

AFFIRMED.