IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-10-00152-CR

 

Alejandro Garcia,

                                                                                    Appellant

 v.

 

The State of Texas,

                                                                                    Appellee

 

 

 



From the 85th District
Court

Brazos County, Texas

Trial Court No. 08-00711-CRF-85

 



ABATEMENT ORDER



 








            Appellant’s court-appointed
counsel has filed an unopposed motion to abate this appeal for the appointment
of new counsel.  Counsel alleges that appellant “may wish to assert a claim of ineffective
assistance of Counsel, which puts Movant into a conflict situation.”  The State
does not oppose the motion.

            Therefore, we abate this
cause to the trial court to determine if new counsel should be appointed.  The
trial court shall: (1) conduct a hearing, if necessary, within twenty-one (21)
days after the date of this Order; (2) prepare any necessary findings of fact
and conclusions of law; and (3) sign a written order regarding the court’s
determination.

            The district clerk shall
prepare a supplemental clerk’s record containing a copy of (1) the trial court’s
findings of fact and conclusions of law, if any, and (2) the trial court’s order. 
The supplemental clerk’s record shall be filed with the Clerk of this Court
within thirty-five (35) days after the date of this Order.

            If a hearing is conducted,
the court reporter shall likewise file a supplemental reporter’s record of the
abatement hearing within thirty-five (35) days after the date of this Order.

PER CURIAM

 

Before Chief
Justice Gray,

Justice
Reyna, and

Justice
Davis

Appeal abated

Order issued
and filed August 11, 2010

Do not publish

 

 






. Penal Code Ann.\
§ 12.34, amended by Act of May 29, 1993, 73rd Leg., ch. 900, § 1.01, 1993 Tex. Gen. Laws 3619 (now codified\
at Tex. Penal Code Ann. § 12.34 (Vernon 1994)). Under the current Penal Code, made effective September 1,\
1994, aggravated assault is either a first or second degree felony. Tex. Penal Code Ann. § 22.02 (Vernon 1994). \
In addition, under the current Penal Code, confinement in a community correctional facility is no longer a sentencing\
option for third degree felonies. Tex. Penal Code Ann. § 12.34 (Vernon 1994).
\
'

function WPShow( WPid, WPtext )
{
 if( bInlineFloats )
 eval( "document.all." + WPid + ".style.visibility = 'visible'" );
 else
 {
 if( floatwnd == 0 || floatwnd.closed )
 floatwnd = window.open( "", "comment", "toolbars=0,width=600,height=200,resizable=1,scrollbars=1,dependent=1" );
 floatwnd.document.open( "text/html", "replace" );
 floatwnd.document.write( "
\r\n" );
 floatwnd.document.write( "\r\n" );
 floatwnd.document.write( "
\r\n" );
 floatwnd.document.write( WPtext );
 floatwnd.document.write( '
Close');
 floatwnd.document.write( "
" );
 floatwnd.document.close();
 floatwnd.focus();
 }
}

function WPHide( WPid )
{
 if( bInlineFloats )
 eval( "document.all." + WPid + ".style.visibility = 'hidden'" );
}
















IN THE
TENTH COURT OF APPEALS
 

No. 10-94-193-CR

        DAVID FREEMAN,

                                                                                       Appellant
        v.

        THE STATE OF TEXAS,
 
                                                                                       Appellee
 

From the 54th District Court
McLennan County, Texas
Trial Court # 93-693-C
                                                                                                    

O P I N I O N
                                                                                                    

          Appellant David Freeman was indicted on one count of attempted murder and a second
count for the lesser-included offense of aggravated assault. Tex. Penal Code Ann. § 15.01,
19.02 (Vernon 1994 & Vernon Supp. 1995); Tex. Penal Code Ann. § 22.02, amended by Act
of May 29, 1993, 73rd Leg., ch. 900, § 1.01, 1993 Tex. Gen. Laws 3619 (now codified at Tex.
Penal Code Ann. § 22.02 (Vernon 1994)). He was convicted by a jury on the aggravated assault
charge and assessed ten years of confinement and a $10,000 fine by the same jury.
          On appeal Freeman raises three points of error: first, whether error requiring reversal
resulted from the State's reference to the details of a prior offense while impeaching one of his
character witnesses during the punishment phase; second, whether error requiring reversal
occurred when the State during its closing argument allegedly misstated the law on a party's duty
to retreat before using deadly force; and third, whether error requiring reversal resulted from the
State's statement during its closing argument at the punishment phase that the jury should ignore
the community correctional facility sentencing option because McLennan County does not have
one. We affirm.
          A brief recitation of the facts will put Freeman's points in their proper context. Freeman
and the victim, Melvin McMillion,


 became acquainted through Freeman's girlfriend, Marie
Brooks. Brooks had allowed McMillion and his common law wife, Flossie Williams, to live in
her home. Freeman did not approve of McMillion living in the same home as Brooks and wanted
him to leave.
          On May 27, 1993, at around 10:30 p.m., Freeman and McMillion were involved in a
confrontation at Brooks' home. According to McMillion, he was asleep on a couch when Freeman
knocked on Brooks' front door. McMillion got up to let him in but then decided not to after
Brooks told him not to open the door. McMillion then went back to sleep until he was awakened
by Freeman cutting across his stomach with a straight razor. McMillion tried to get up, but
Freeman held him down with his other hand. Eventually, McMillion escaped. He ran into the
kitchen, grabbed a meat cleaver, and began to strike Freeman about the head with it. McMillion
then ran into the bathroom. Freeman followed him and began to slice him some more. McMillion
then fled the home and lay in the road until a motorist driving by found him.
          According to Freeman, he arrived at Brooks' home after 10:00 p.m. on May 27 to pay her
a visit, as he did frequently since they had been dating for over six years. He knocked on the
door, but there was no answer. He entered the house anyway, as he had done many times before
when no one had come to answer the door. When he walked through the door he saw McMillion. 
He asked McMillion if he knew where Brooks was. McMillion asked him why he wanted to
know. The two began to argue until McMillion struck Freeman with a meat cleaver. Freeman
then pulled out a straight razor that he had brought with him to return to Brooks and began to cut
McMillion with it. The two continued to strike at each other with their weapons until McMillion
told Freeman, "I don't want no more," and the fight ended.
          At the end of the guilt-innocence stage, the jury was instructed on both attempted murder
and aggravated assault. The court also gave a self-defense instruction. The jury chose to believe
McMillion's version of the events on May 27 and rendered a verdict of guilt for aggravated
assault.
          In his first point of error Freeman contends error requiring reversal resulted when the State
impeached one of his character witnesses during the punishment phase with a question concerning
a prior arrest for aggravated assault. Freeman argues that the question was improper because the
State, in asking the question, referred to the weapon he used in committing the prior offense, a
straight razor. Freeman alleges the State was permitted only to ask the character witness about
the reason for Freeman's arrest and that any reference to the details of the offense was improper. 
Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a) (Vernon Supp. 1995); Walker v. State, 610
S.W.2d 481, 482 (Tex. Crim. App. [Panel Op.] 1980).



          Freeman bases his argument on Walker and its progeny. See, e.g., Montes v. State, 870
S.W.2d 643, 649 (Tex. App.—El Paso 1994, no pet.); Webb v. State, 840 S.W.2d 543, 550 (Tex.
App.—Dallas 1992, no pet.). These cases that have relied upon Walker, however, have involved
situations where the State admits evidence of a defendant's prior offense at the punishment phase
for enhancement purposes pursuant to article 37.07, section 3(a). Here, the State did not attempt
to admit into evidence Freeman's prior conviction for aggravated assault for enhancement
purposes. Instead, the State was impeaching one of Freeman's character witnesses at the
punishment phase. Tex. R. Crim. Evid. 405(a).
          It is true that Walker also involved the State's mentioning of the specific details of the
defendant's prior offense while impeaching one of the defendant's character witnesses during the
punishment phase. Walker, 610 S.W.2d at 482. The Court of Criminal Appeals, subsequent to
Walker, has held that the specific details of the defendant's prior offenses may be inquired into
when impeaching a defendant's character witness. Evans v. State, 757 S.W.2d 759, 760 (Tex.
Crim. App. 1988) (per curiam); see Tex. R. Crim. Evid. 403(a). The State's reference to a detail
of Freeman's prior conviction for aggravated assault, i.e., his use of a straight razor, came about
in an impeachment question addressed to one of the defendant's character witnesses. Therefore,
Evans controls and the question was, consequently, not improper under article 37.07, section 3(a). 
Id. Freeman's first point is overruled.
          In his second point Freeman contends the State engaged in improper jury argument at the
guilt-innocence phase by misstating the law. Whiting v. State, 797 S.W.2d 45, 48 (Tex. Crim.
App. 1990). The disputed portion of the State's closing argument consists as follows:
Now, you may not agree with the law that says that you have the duty to retreat,
but that is the law, and that's the law that applies in this case. So even if . . . you
believe the story that [the victim] attacked him with this meat cleaver, David
Freeman had a duty to retreat out that open door, down the steps and down the
street before he could use deadly force. He had that opportunity and he did not
avail himself of [it.]

Freeman alleges the State improperly argued to the jury that Freeman bore an absolute duty to
retreat from the victim's advances when the law imposes no such duty. Id.


 We disagree.
          We note that the above-quoted segment of the State's closing argument was not presented
to the jury as an isolated statement. Immediately prior to the statement, the State paraphrased the
court's charge on self defense. Both the paraphrase and the charge echo the law on the permissible
use of deadly force in self defense as provided in the Penal Code. Section 9.32 of the code
provides that a person is justified in using deadly force against another when three conditions are
all satisfied: (1) if he would be justified in using force against the other under section 9.31 of the
code;


 (2) if a reasonable person in the actor's situation would not have retreated; and (3) when
and to the degree he reasonably believes the deadly force is immediately necessary to protect
himself against the other's use or attempted use of unlawful deadly force. Tex. Penal Code
Ann. § 9.32 (Vernon 1994). 
          Accordingly, the State was not, despite Freeman's contentions, misleading the jury into
thinking that he bore an absolute duty to retreat. To the contrary, the State was correctly
paraphrasing the law that a defendant must retreat and may not use deadly force if a reasonable
person would have first retreated. Tex. Penal Code Ann. § 9.32; Duncantell v. State, 877
S.W.2d 859, 863 (Tex. App.—Beaumont 1994, no pet.); see Werner v. State, 711 S.W.2d 639,
645 (Tex. Crim. App. 1986). The prosecutor's application of the facts to the law was a correct
summation of the evidence and, therefore, constituted proper jury argument. Hughes v. State, 878
S.W.2d 142, 157-58 (Tex. Crim. App. 1993) (There are four permissible areas of jury argument:
(1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answers to
arguments from the defense; and (4) pleas for law enforcement.) (on rehearing); see Duncantell,
877 S.W.2d at 863. Freeman's second point is overruled.
          In his third point of error Freeman asserts error requiring reversal resulted from improper
jury argument by the State. At the close of the punishment phase of the trial, the court instructed
the jury on the possible punishment range for Freeman's conviction of aggravated assault. They
were instructed that they could assess confinement in prison for at least two but no more than ten
years, or they could sentence Freeman to confinement in a community correctional facility for any
term of not more than one year. Tex. Penal Code Ann. § 12.34 (Vernon 1994). The jury was
also informed that they could assess a fine of up to $10,000. Id.



          The State, during its closing argument to the jury at the end of the punishment phase,
several times asked the jury to disregard the portion of the charge involving possible confinement
in a community correctional facility. Freeman, however, failed to object to any of these allegedly
improper requests.
          Generally, any error because of improper jury argument is waived by failure to make a
proper and timely objection. Tex. R. App. P. 52(a); Briddle v. State, 742 S.W.2d 379, 389 (Tex.
Crim. App. 1987), cert. denied, 488 U.S. 986, 109 S.Ct. 543 (1988). The failure to object to the
State's reference to a county not having a community correctional facility, even though
confinement in a community correctional facility is a sentencing option provided to the jury, will
waive the party's complaint on appeal. Lum v. State, 903 S.W.2d 365, 373 (Tex.
App.—Texarkana 1995, no pet.). Freeman's third point is overruled.
          The judgment is affirmed.
 
                                                                                 BOBBY L. CUMMINGS
                                                                                 Justice

Before Chief Justice Thomas,
          Justice Cummings, and
          Justice Vance
Affirmed
Opinion delivered and filed September 29, 1995
Do not publish